**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| J. G. WAHLERT on behalf of himself and all others similarly situated, | ) ) ) | |
| v. | ) ) | Case No.: 17-cv-8055 |
| KOVITZ SHIFRIN NESBIT, an Illinois professional corporation; and KALMAN MANAGEMENT, INC., an Illinois corporation. | ) ) ) ) ) ) | Jury Demanded |

## <u>COMPLAINT</u>

1.        Plaintiff J. G. WAHLERT ("WAHLERT"), complains against Defendant KOVITZ, SHIFRIN, NESBIT ("KSN"), an Illinois professional corporation, and Defendant KALMAN MANAGEMENT, INC., ("KALMAN") for (a) violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., affecting the Class A Plaintiffs, and, (b) on behalf of the Class B Plaintiffs from Defendant KSN and its collection agent, Defendant KALMAN, for violating the FDCPA by collecting attorney fees and other amounts which Defendant KSN was not able to collect directly through lawful means, and for damages proximately caused by Defendants KSN and KALMAN  by engaging in related torts, states and alleges as follows:

### II. JURISDICTION and VENUE

2. **FDCPA jurisdiction** — This court has original jurisdiction in this action to address abusive debt collection practices prohibited by Congress by virtue of 28 USC § 1331 and 15 USC § 1692k(d) because the matters in dispute involve federal laws arising under the Federal

Fair Debt Collection Practices Act (FDCPA), 15 USC § 1692 *et. seq,* and specifically 15 USC § 1692e which expressly prohibits debt collectors from using false documents as means to collect disputed debts.

3. **FDCPA prohibitions** —

(a) the FDCPA prohibits debt collectors from utilizing non-attorneys to collect alleged debts by posing as attorneys (15 USC § 1692e(3); *Avila v Rubin*, 84 F. 3d 222 (7th Cir 1996));

(b) the FDCPA prohibits a debt collector from authorizing or ratifying an employee's acts of creating and recording a false debt instrument (15 USC § 1692e) (and, as in this case, a fraudulent "assessment" lien) to collect money from a class of easement owners when not otherwise authorized by law, see *Lakeland Property Owners Association v. Larson*, 121 Ill.App.3d 805, 459 N.E.2d 1164, (Ill.App. 2nd Dist. 1984).

4. **Supplemental jurisdiction** — In addition to primary federal jurisdiction, this court has supplemental jurisdiction pursuant to 28 USC § 1367 over the additional claims for related fraud, trespasses upon easements, and tortious interference with a third-party beneficiary agreement memorialized in a 1961 deed granting the easements to a private recreational lake and adjacent parkland, because these claims are so related to claims within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. **Venue** — Venue is proper in this District under 28 USC § 1391(b)(2) and 18 USC 1965(a) because, as described more fully below, all of the actions of the Defendants giving rise to the injuries complained of occurred in this District.

### III. CLASS ALLEGATIONS

6. **Rule 23 allegations** — This action is brought on behalf of Plaintiff J. G. WAHLERT (WAHLERT) and all other person similarly situated under Rules 23(a), 23(b)2), and 23(b)(3) of the Federal Rules of Civil Procedure.

7. **Rule 23(a) allegations** — The Plaintiffs allege that this action is brought and may properly be maintained as a class action pursuant Rule 23(a) of the Federal Rules of Civil Procedure because, as shown by the details of this complaint, it satisfies the numerosity, predominance, typicality, adequacy, and/or superiority requirements of the FDCPA, and the knowledge of the size of the classes is within in the Defendants' individual and joint possession although the exact size is not known to Plaintiff WAHLERT or the other Class Plaintiffs.

8. **Rule 23(b) allegations** — This action is properly brought as a class action because Defendant KOVITZ SHIFRIN NESBIT regularly collects debts, is one of the largest debt-collection law firms in Illinois, and is thus a "debt-collector" as defined in the Act.

9. **Rule 23(c) allegations** — Common questions of law and fact exist as to all members of each of the two classes and predominate over any questions affecting individual members of the class, including but not limited to:

(a) with respect to the Class A Plaintiffs, whether Defendant's debt collection practice violated 15 USC § 1692e(3) and has affected many hundreds of consumers; and

(b) with respect to the Class B Plaintiffs, whether they incurred damages from the related tortious activities of the Defendant debt collector and its collection agent in connection with the Defendant debt collector's violations of the FDCPA.

10. **Class A & B Plaintiffs** — The Class Plaintiffs in this is action fall within either one or both of two classes, with all members of the Class B Plaintiffs being Class A Plaintiffs, and

are 1) natural persons who received debt collection letters at their Illinois residences, 2) related to alleged consumer debts from the Defendant KSN law firm, 3) within the last 365 days 4) with realistic facsimile signatures, 5) and which were intended to give the Plaintiffs the false impression that the debt-collection letters were written, with "meaningful involvement," by attorneys at the KSN law firm.

11. **Class A Plaintiffs** — For calculating the number of Class A Plaintiffs, after analysis of a recent FDCPA class-action settlement approved on February 2, 2017 in *McCarter v, Kovitz Shifrin Nesbit*, (N.D. Ill. 2015), it is asserted based upon information and belief that the size of the Class A plaintiffs consist of many hundreds of natural persons and consumers within the State of Illinois.

12. **Class B Plaintiffs** — For calculating the number of Class B Plaintiffs, based on the proposition that property owners in the Loch Lomond Community with easement rights to use the lake are obligated to pay money to the nonprofit corporate owner of the servient estate, it is asserted, based upon information and belief, that the size of the Class A plaintiffs consist of at least 40 natural persons and consumers in Mundelein, Illinois.  *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328 (N.D. Ill. 2006).

### IV. PARTIES and OTHER PERSONS

13. **Plaintiff WAHLERT as a Class Representative of Class A** — For purposes of asserting a claim on behalf of himself and other Class A Plaintiffs for violations of 15 USC §§ 1692e and 1692e(3), the class consists of similarly situated consumers 1) within Illinois; 2) who received debt collection letters substantively the same as those in Exhibits A, B, & C; 3) from Defendant KSN; 4) within the last 365 days prior to the filing of this complaint; 5) for alleged consumer debts as defined in Section 1692a(5).  Plaintiff WAHLERT is a natural person, an Illinois resident, and a consumer who received the letter attached hereto as Exhibit A within the last 365 days which was used to collect an alleged consumer debt related to his personal,

household, and family expenditures, and which contained a facsimile signature of one of KSN's attorneys purposed to mislead letter recipients into believing that the letters were written with "meaningful involvement" by an attorney, see *Avila v Rubin*, 84 F. 3d 222 (7th Cir 1996).

14. **Plaintiff WAHLERT as a Class Representative of Class B** — For purposes of asserting claims on behalf of himself and  Class B Plaintiffs for violations of 15 USC §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(9), 1692d(1), and 1692f,  as well as damages proximately caused by the related tortious activities of Defendant KSN and its collection agent and co-Defendant KALMAN, it is asserted that 1) Plaintiff WAHLERT owned an easement right 2) at a time when Defendant KSN's debt collection letters were received; 3) that entitled WAHLERT and the Class members; 4) to use the Loch Lomond lake in Mundelein, Illinois under covenants established prior to 1957; further, 5) that those covenants cannot be revoked or modified without the consent of the easement owners; 6) that the non-profit corporation formed in 1957 ("LLPOA") is a voluntary, as opposed to a mandatory, corporation; 7) and with said corporation's membership eligibility limited to property owners in the Loch Lomond Community (Exhibit D); 8) where said corporation received a 1961 deed to the Loch Lomond lake subject to expressly declared, perpetual pre-1957 easement rights (Exhibit E); and 9) owned such easement rights at the time when the Class Members received the debt-collection letters from Defendant KSN; and (10) at the time when Defendant KALMAN interfered with easement access and thus interfered with the McINTOSH-LLPOA third-party beneficiary agreement memorialized in the LLPOA's 1961 deed.

15. **Defendant KSN as a debt collector with special knowledge** — Defendant KOVITZ SHIFRIN NESBIT (KSN), is one of the largest debt-collector law firms in Illinois that employs attorneys who have special knowledge with respect to lawful debt collection practices,

as well as non-attorneys who cannot pose as attorneys without violating 15 USC §§ 1692e and

1692e(3). *Avila v Rubin*, 84 F. 3d 222 (7th Cir 1996).

    16. **Defendant KSN as a debt collector with specific knowledge** — Defendant KSN

specializes in the law affecting communities with common properties (such as Loch Lomond

lake subject to easement rights in this case), and knows or should know, with respect to the Class

B Plaintiffs:

    (a) As explained by Attorney SHIFRIN in a 2010 IICLE publication, in a manner

consistent with the holding in *Lakeland Property Owners Association v. Larson*, 121

Ill.App.3d 805, 459 N.E.2d 1164, (Ill.App. 2nd Dist. 1984),

> **"In order to create a ... homeowners' association, <u>there must be a
> unanimous subscription to an underlying document by the owners of
> the property</u> ...Anything less creates a "voluntary" association in
> which membership is not mandatory and rules are not enforceable
> against nonmembers." (emphasis added)**
> — Attorney Jordan I. Shifrin of KOVITZ SHIFRIN NESBIT (*Illinois
> Condominium Law*, 10.6, IICLE 2010 edition)

    (b) Accordingly, Defendant KSN knows or should know, that the mere use of the phrase

"property owners association" in the name of a corporation in a 1957 Charter does not

inherently indicate that the incorporated association is a mandatory-membership

association known as a homeowners' association or HOA, but may in fact indicate the

existence of a voluntary-membership incorporated association whose membership

eligibility is limited to property owners with easement rights to use common property,

without being members of a HOA.

    (c) Similarly, Defendant KSN knows or should know, that, where the 1957 Charter of an

incorporated, nonprofit association does not contain the language mandated by 805 ILCS

§ 105/102.10(a)(7), that language used when a corporation is otherwise formed to operate

as a mandatory-membership association known as a HOA, no person has the authority to declare themselves as corporate officials without holding charter-required elections, or assert any special status as corporate officials, assess fees, physically control access to the lake to the detriment of nonpaying easement owners, or compel easement owners to be members of the incorporated association and impose debts upon them contrary to 720 ILCS 5/12-6.5. Additionally, in this case, persons with purported authority misrepresented the terms of the 1957 corporation's charter, falsely asserting that the corporation is a HOA of the type described in Treas Reg § 1.528-1, 1.528-1(c), and

(d) In fact, in 2010, Attorney NESBIT and his KSN law firm declined an offer to attempt to collect $188,000 from easement owners on behalf of persons with purported authority to represent the nonprofit corporation under the 1961 deed subject to the declared easement rights, because he knew that there were no covenants which could be used to compel easement owners to become members of the LLPOA, as the Association only owns the lake subject to their easement rights.

17. **Attorney RONALD J. KAPUSTKA** — The Plaintiffs are informed and believe and therefore allege that the name RONALD J. KAPUSTKA (KAPUSTKA) is both

(a) the name of an KSN attorney who has been identified on Defendant KSN's web site as an attorney who specializes in debt-collection activities as the "Lead Association Collection Attorney" at KSN and who "takes pride" in "helping associations establish and enforce aggressive collections policies" with a staff of non-attorneys who assist him in such efforts, and-

(b) one of the aliases used by KSN's non-attorney employees who regularly sign debt collection letters by affixing facsimile signatures of Attorney KAPUSTKA or other KSN

attorneys when they, the KSN attorneys, and the KSN firm want to convey the

impression to the recipients that debt collection letters and other communications mailed

by them were produced and written with "meaningful involvement" from KSN attorneys.

18.  **Defendant KALMAN MANAGEMENT, INC. as a collection agent** – Defendant

KALMAN MANAGEMENT, INC. (KALMAN) advertises its debt collection services on the

internet and regularly fulfills the role of being a collection agent, and, in this case, acted as the

enforcer of a purported security interest by controlling the entrance ways to the Loch Lomond;

by sending repeated mailings to interfere with the easement access of nonpaying easement

owners, and by accepting an assignment from Defendant KSN to collect $106.00 in attorney fees

from each easement owner who had not paid the attorney fees and other amounts demanded by

Defendant KSN and its employees since its debt-collection letters were mailed to the Class B

Plaintiffs in November 2016.

19.  **The LLPOA** — In 1957, the LOCH LOMOND PROPERTY OWNERS

ASSOCIATION (LLPOA) was incorporated as a voluntary-membership Illinois nonprofit

corporation without shareholders or owners, by a mere 10 property owners out of the hundreds in

the Loch Lomond Community in Mundelein, Illinois, for purposes other than to be a HOA or

corporation to enforce covenants or maintain common property, and was incorporated as a

voluntary-membership association, with membership eligibility limited to property owners in the

Loch Lomond Community as described in its charter:

> "To promote the civic, educational, patriotic, economic, social and charitable purposes of
> the community known as Loch Lomond; to bring together the members of said
> community to the end that the strength of their common efforts and unity will result in the
> greater benefit to all." (Certificate # 8531)

20. **The LLPOA as an obligor in a 1961 third-party beneficiary agreement** — In 1961, the ARTHUR T. McINTOSH company, the developer of the Loch Lomond community, conveyed the Loch Lomond lake to the LLPOA under an agreement memorialized in a 1961 deed.

21. McINTOSH had created three separate subdivisions beginning in 1954 around a 75-acre lake for the exclusive benefit of those who purchased its lots with perpetual easement rights to use the lake and entrance-way parks.

22. Under the 1961 deed, the LLPOA accepted ownership of the lake subject to three separate pre-1957 covenants, as well as the perpetual easement rights of the Loch Lomond property owners, and a written promise to not dilute the easement rights of the property owners by allowing persons to use the lake other than the owners and occupants of the lots identified in the three subdivisions named in the deed.

23. **Attorney KATHERINE GRIFFITH** — The Plaintiffs are informed and believe and therefore allege that the name KATHERINE GRIFFITH (GRIFFITH) is both

(a) the name of a KSN attorney who was hired by the LLPOA **(i)** to act contrary to the obligation of the LLPOA to exclude ineligible persons, and **(ii)** to act contrary to the property rights of the easement owners by assisting the LLPOA in obstructing easement access and demanding annual payments from easement owners based upon false representations that the LLPOA is a mandatory-membership association known as a HOA; and

(b) the name of a non-attorney who acted actually drafted Document # 7241293 and recorded it with the Lake County Recorder of Deeds under the names of KATHERINE GRIFFITH and the Defendant KSN law firm after, *inter alia,* **(i)** falsely representing in

paragraph one that the nonprofit LLPOA has owners or stockholders (later identified as hundreds of lot owners in six separate subdivisions) and **(ii)** falsely representing the terms of the LLPOA's charter in paragraph four to misrepresent that the LLPOA was incorporated, like a bona fide HOA, to enforce covenants.

## I. FIRST CAUSE OF ACTION

**FDCPA Violations** — False Representations that the
Person or Persons Mailing Debt-Collection Letters is an Attorney

24.  **Common facts and allegations** — Paragraphs 1(a). 2, 3(a), 5 through 9(a), 10, 11, 13, and 15 are incorporated by reference on behalf of the Class A Plaintiffs.

25. **Threats in the name of an attorney** — When mailing debt collection letters to the Class A Plaintiffs, Defendant KSN employed nonattorneys to assist with mailing debt collection letters and, according to information and belief, allowed such nonattorneys to misrepresent themselves as being attorneys by using realistic facsimile signatures, which was held to violate the FDCPA, and the Defendant KSN law firm did so in violation of

**(a)** 15 USC § 1692e(3), which prohibits the false representation or implication that any individual is an attorney or that any communication is from an attorney, and

**(b)** 15 USC § 1692e(9), which prohibits the use of any written communication which creates a false impression as to its source, authorization, or approval.

**(c)** 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt.

26.  In addition to similar debt collection letters mailed to other Class A Plaintiffs with false facsimile signatures, Defendant KSN mailed the attached Exhibit A to Plaintiff WAHLERT within the last 365 days to give the false impression that it was mailed by one of Defendant KSN's attorneys.

27. Exhibit B with a similar false facsimile signature was mailed by the Defendant KSN firm to MARTIN WITTROCK (WITTROCK) within the last 365 days to give the same false impression.

28. Exhibit C with a similar false facsimile signature was mailed by the Defendant KSN firm to SCOTT WAHLERT (S WAHLERT) within the last 365 days to give the same false impression.

29. Based upon information and belief, it is alleged that within the last 365 days, the Defendant KSN law firm mailed over 100 debt collection letters with similar realistic facsimile signatures to deceive other recipients that the letters were mailed from a KSN attorney.

## II. SECOND CAUSE OF ACTION

**FDCPA Violations** — Law Firm's Unlawful Demands for
Payments of Attorney Fees Contrary to the American Rule

30. **Common facts and allegations** — Paragraphs 1 through 17(a) are incorporated by reference on behalf of the Class B Plaintiffs.

31. **KSN's unlawful demands for pre-judgment attorney fees as alleged debts** — Within the last 365 days prior to the filing of this Complaint, as illustrated by Exhibits A, B, and C, Defendant KSN violated the FDCPA, by demanding payments of attorney fees without any basis in any agreement, statute, or court-made exception.

32. Defendants KSN, KAPUSTKA, and DOE I demanded $106.00 as alleged debts described as attorney fees from each of the Class B Plaintiffs who had not paid the purported HOA dues demanded by Defendant KSN, and also threatened to collect more in attorney fees if the recipients of KSN letters refused to pay the demanded attorney fees, in violation of

(a) 15 USC § 1692e, which prohibits the use of any false, deceptive, or misleading

representation or means in connection with the collection of any debt;

**(b)** 15 USC § 1692e(2)(A), which prohibits the false representation of the character, amount, or legal status of any debt;

**(c)** 15 USC § 1692e(5), which prohibits threatening to take any action that cannot legally be taken or that is not intended to be taken;

**(d)** 1692e(10), which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt;

**(e)** 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt; and

**(g)** 15 USC § 1692f(1), which prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

33. **Document signed by adversaries of the LLPOA and the Class B Plaintiffs** — Defendant KSN cannot point to any statute or agreement by which the Class B Plaintiffs are obligated to pay the attorney fees demanded in KSN's debt collection letters, and the false document recorded at the Lake County Recorder of Deeds as Document # 7241293 purported to take away the Class B Plaintiff's property rights without their consent is not binding upon them because it was signed by two and only two persons who were acting as adversaries of both the LLPOA and them.

### III.    THIRD CAUSE OF ACTION

**FDCPA Violations** — Threats to Take Actions
Which are Illegal and/or not Intended to be Taken

34. **Common facts and allegations** — Paragraphs 1 through 23 are incorporated by reference on behalf of the Class B Plaintiffs.

35. **KSN's threats to take actions which were illegal and not intended to be taken** — In each of the debt collection letters mailed to the Class B Plaintiffs in November 2016, Defendant KSN and the KSN employees who used the facsimile signature of Attorney

KAPUSTKA, demanded that the letter recipients pay or arrange to pay attorney fees plus disputed HOA fees based upon the false debt instrument created and recorded by one or more of KSN employees, they wrote, "If you do neither of these things by [DATE], I will be entitled to initiate legal proceedings against you …", while in fact having no legal right or intention to initiate legal proceedings, in violation of

(a) 15 USC § 1692e(5), which prohibits threatening to take any action that cannot legally be taken or that is not intended to be taken; and

(b) 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt.

36. **Admission by conduct** — In January 2017, after not receiving the amounts demanded in its debt collection letters, and without initiating any of its threatened "legal proceedings" against nonpaying easement owners, Defendant KSN assigned the collection of the demanded attorney fees and other demanded amounts to co-Defendant KALMAN, which advertises its collection activities on its web site, and who likewise made written demands on or about January 31, 2017 for the payments of $106.00 in attorney fees from each of the nonpaying easement owners. (Exhibit D).

37. **Further admission by conduct** — During the passage of a year since making the November 2016 threats to initiate legal proceedings against nonpaying easement owners, which it knew and still knows would be without legal justification, Defendant KSN, as of the date of the filing of this complaint, has not initiated even one of its threatened actions against the Class B Plaintiffs.

### IV. FOURTH CAUSE OF ACTION

**FDCPA Violations** — Misrepresentations
as to the Alleged Creditor's Identity

38. **Common facts and allegations** — Paragraphs 1 through 23 are incorporated by reference on behalf of the Class B Plaintiffs.

39. **KSN's false representations as to its client** — In November 2016, when Defendant KSN mailed debt collection letters to the Class B Plaintiffs, it knowingly chose to represent persons who had wrongfully assumed the purported authority of the LLPOA, and contrary to the property rights of its client, the LLPOA, as set forth in the LLPOA's 1957 charter, including the right to limit membership eligibility, as well as its 1961 deed which sets forth the right to limit lake usage to the easement owners.

40. Defendant KSN did so in each of the debt collection letters mailed to the Class B Plaintiffs in November 2016, which contained the misrepresentation that it was seeking to collect debts on behalf of the incorporated voluntary-membership association lake owner known as the LLPOA, in violation of

**(a)** 15 USC § 1692e(9), which prohibits creating a false impression as to the debt collection letters' source, authorization, or approval, and

**(b)** 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt.

41. **2010 efforts to hire the KSN firm as a debt collector** — As early as 2010, as evidenced by the purported officials' of the LLPOA attempts to hire Attorney Nesbit and his KSN firm to collect approximately $188,000 in so-called back dues from easement owners, **(a)** Defendant KSN became aware that certain persons who claimed to be corporate officials of the LLPOA intended to act in a manner contrary to covenants for one or more subdivisions identified in the LLPOA's 1961 deed and **(b)** KSN, by and through Attorney Nesbit, informed them, *inter alia*, that he and his firm could not undertake collection efforts unless and until they

obtained the consent of the easement owners to change the applicable covenants and take the proper steps to convert the voluntary-membership LLPOA to a mandatory-membership HOA.

42. **Initial 2010 absence of fraudulent actions on the part of KSN** — In 2010, based upon information and belief, it is alleged that Attorney Nesbit did not tell the persons claiming to be representatives of the LLPOA that they could expand their territory to collect money from lot owners in six subdivisions by falsely representing that the six subdivisions constituted in fact one subdivision by recording a fraudulent document without authority contrary to the terms of the LLPOA's 1957 charter and its 1961 deed, as KSN's Attorney GRIFFITH subsequently did on October 22, 2015.

43. **2013 hiring of Attorney GRIFFITH** — In 2013, certain unelected persons who intended to act as corporate officials on behalf of a fraudulent HOA hired KSN Attorney GRIFFITH to act on behalf of the LLPOA for purposes of expanding their territory to six subdivisions and perpetuating a scheme described in a June 24, 2013 letter to Attorney NESBIT and his KSN law firm from Plaintiff WAHLERT.

44. Those unelected persons acted without authority, and there was never any enforceable, binding and mandatory HOA created, attendant to the hiring of Attorney GRIFFITH.

45. **Attorney GRIFFITH's knowledge that persons claiming to be corporate officials were not elected** — In an October 5, 2013 neighborhood meeting at a Mundelein firehouse, while Attorney GRIFFITH was sitting at the front of the room with unelected persons who were pretending to be LLPOA officials, she was specifically informed by Plaintiff WAHLERT that the persons sitting with her were not duly-elected in a charter-required election

and she was in a position to observe that not one of the persons sitting with her denied that accusation.

46. **Attorney GRIFFITH's use of a bait-and-switch scheme** — In 2013 and thereafter, KSN Attorney GRIFFITH assisted those unelected persons claiming to be LLPOA officials by using a bait-and-switch scheme whereby **(a)** she or her non-attorney ghostwriter drafted one document for circulation and approval beginning in 2013 among the property owners in the vicinity of the Loch Lomond lake that referred exclusively to the term "subdivision" in the singular, without disclosing that she intended to thereafter record an altered version, **(b)** which she did on October 22, 2015 (Document # 7241293), with a previously undisclosed attachment that referred to six separate subdivisions and the approximately 601 lots within them.

47. **Illinois law dealing with forgeries** — Under 720 ILCS § 5/17-3 dealing with forgeries, subsection c-5 defines false document as including, "but is not limited to, a document whose contents are false in some material way, or that purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority."

48. **Purported real property transfers without authority** — The recorded 2015 document for the benefit of unelected persons claiming to be LLPOA officials, which was signed by two and only two persons, is a false document cognized as a forgery under Illinois law, because it purported to convey real property rights to lot owners in three subdivisions outside of the Loch Lomond Community identified in the LLPOA's 1961 deed and was signed by persons who had no authority to make such transfers.

49. **Purported imposition of debt obligations without authority** — The recorded 2015 document made for the benefit of unelected persons claiming to be corporate officials of a

fraudulent HOA, is a false document and forgery created out of whole cloth, to give those unelected persons cover for continuing with their frauds, because it misrepresents the terms of the LLPOA's 1957 charter.

50. Specifically, it misrepresents the 1957 charter to give the false impression that the LLPOA was incorporated as a mandatory HOA to enforce covenants in a manner consistent the type described in Treas Reg § 1.528-1 and 1.528-1(c), whereas the plain language of the LLPOA's 1957 charter shows that it was not incorporated to enforce the covenants for any subdivision or any combination of the six separate subdivisions identified in the attachment to the 2015 document.

51. **Defendant KSN's knowledge** — At the time when Defendant KSN mailed the debt collection letters to the Class B Plaintiffs, it knew that it had lacked authority to represent the LLPOA, after being informed and knowing that the LLPOA's charter requires the annual election of its officials.

52. Further, Defendant KSN possessed the knowledge that no unincorporated organization has the right to appoint some of its leaders to be purported corporate officials for the purpose of exercising domain over property owned by a nonprofit corporation.

53. Further, after twice being informed in 2013 (in a May 13, 2010 letter and at an October 5, 2013 meeting) that unelected persons who met with KSN in the name of the LLPOA were not elected in charter-required elections but rather held themselves out as LLPOA officials, Defendant KSN's Attorney GRIFFITH knowingly used a fraudulent bait-and-switch technique to prepare two separate documents for the purposes of acting contrary to the property rights of its putative client, the LLPOA.

54. All this was done by KSN and GRIFFITH with the knowledge that it was contrary to the LLPOA's deed, its covenants referenced in the deed, and its charter.

## V.  FIFTH CAUSE OF ACTION

**FDCPA Violation** — Use of False Debt Instrument
As Unlawful Means to Collect Debts

55.  **Common facts and allegations** — Paragraphs 1 through 23, and paragraphs 39 through 54, are incorporated by reference on behalf of the Class B Plaintiffs.

56. **KSN's knowing use of false debt instrument** — Defendant KSN, through the actions of its employee Attorney GRIFFITH, which it ratified, knowingly created and recorded a false document (720 ILCS § 5/17-3) as both a debt instrument and a continuing "assessment" lien for the purposes of unlawfully interfering with the property rights of easement owners as wrongful means to compel them to be members of an association which owns a private lake contrary of the prohibitions of 720 ILCS § 5/32-13 and 720 ILCS § 5/12-6.5, and as a means to collect disputed debts in violation of

**(a)** 15 USC § 1692d(1) which prohibits debt collectors from using or threatening to use any criminal means to harm the property of any person.

**(b)** 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt.

57.  **Admission by conduct while making continued assertions of debts** — On or about March 9, 2017, in letters mailed by Defendant KSN to attorneys that were hired to defend the debt claims asserted against the Class B Plaintiffs, which were also signed with facsimile signatures of KSN's Attorney KAPUSTKA to give the false impression that they were produced by him instead of a non-attorney, the (unknown) author wrote:

> "While the LLPOA considers the assessments due and owning from each and every owner in the LLPOA, it has directed our office to put the collection of this debt on hold for the time being while the Board considers its options in proceeding."

59. **Continuing efforts to collect alleged debts** — Notwithstanding such statements, Defendant KSN continued to utilize the services of its collection agent, co-Defendant KALMAN, to continue to mail its own collection letters in efforts collect $106.00 as attorney fees from nonpaying easement owners, plus other amounts demanded in KSN's debt-collection letters, and KSN retained the benefits of the fraudulent "assessment" lien created and recorded by Attorney GRIFFITH and KSN without removing or correcting it.

## VI. SIXTH CAUSE OF ACTION

**FDCPA Violations** — Use of Collection Agent to do
and/or Threaten to do What KSN Could Not Legally do

60. **Common facts and allegations** — Paragraphs 1 through 23, and paragraphs 39 through 54, are incorporated by reference on behalf of the Class B Plaintiffs.

61. **KSN's authorization of agent's subsequent illegal collection efforts** — At a time within 365 days prior to the filing of this complaint, when Defendant KSN knew it could neither lawfully directly or indirectly engage in collection activities, and at a time when it was frustrated in its efforts to collect money from some nonpaying easement owners, Defendant KSN transmitted the names of the nonpaying easement owners to Defendant KALMAN.

62. Co-Defendants KSN and KALMAN were working together as mutual agents in a joint enterprise to accomplish the same goals, so that Defendant KALMAN could mail collection letters to the nonpaying easement owners on or about January 31, 2017 in order to **(a)** demand payments of the $106.00 in pre-judgment attorney fees which were added to the alleged debts contrary to the American Rule in November 2016; **(b)** demand payment of disputed HOA fees which Defendant KSN also demanded but could not lawfully collect, and **(c)** remind the nonpaying easement owners that lake access was controlled by Defendant KALMAN, who could and did in fact exercise the power to obstruct lake access as a prohibited nuisance in violation of

720 ILCS 5/47-5(5) and would not issue "Beach tags, boat stickers, key cards" to the electronic locks to the entrance way gates until all demanded amounts were paid, in violation of

(a) 15 USC § d(1) which prohibits debt collectors from using or threatening to use any criminal means to harm the property of any person;

(b) 15 USC § 1692e, which prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt;

(c) 15 USC § 1692e(2)(A), which prohibits the false representation of the character, amount, or legal status of any debt;

(d) 15 USC § 1692e(5), which prohibits threatening to take any action that cannot legally be taken or that is not intended to be taken;

(e) 1692e(10), which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt;

(f) 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt;

(g) 15 USC § 1692f(1), which prohibits the collection of any amount  unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and

(g) 15 USC § 1692f(6)(A), which prohibits taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest.

### VII. SEVENTH CAUSE OF ACTION

**FDCPA Violations** — Use of Collection Agent to
Threaten to use Violence and "Reasonable Force" to
Remove Nonpaying Easement Owners from Their Homes

63. **Common facts and allegations** — Paragraphs 1 through 23, and paragraphs 39 through 59, are incorporated by reference on behalf of the Class B Plaintiffs.

64. **KSN's authorization of agent's illegal threats to use "reasonable force"** — At a time, within the last 365 days prior to the filing of this complaint, when Defendant KSN knew it could not lawfully, directly nor indirectly, threaten to take possession of the residences of the nonpaying easement owners based upon their refusal to pay the amounts demanded in its November 2016 collection letters and the forgery recorded on 10/22/2015, Defendant KSN further authorized Defendant KALMAN, implicitly or explicitly, to mail additional collection letters.

65. Those letters contained photocopies of Article VI, Section 7 of the false document especially created and recorded on 10/22/2015 by Defendant KSN, and purported to **(a)** demand payments of the $106.00 in attorney fees which were added to the alleged debts contrary to the American rule on or about the same dates when Defendant KSN mailed its debt collection letters **(b)** demand payments of disputed HOA fees which Defendant KSN also demanded, but could not lawfully collect, and, instead of merely threatening to obstruct easement access, threatened to use "reasonable force" to remove nonpaying easement owners from their homes in violation of

> **(a)** 15 USC § d(1) which prohibits debt collectors from using or threatening to use violence or any criminal means to harm the physical person or property of any person.
>
> **(b)** 15 USC § 1692e, which prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt;
>
> **(c)** 15 USC § 1692e(2)(A), which prohibits the false representation of the character, amount, or legal status of any debt;

**(d)** 15 USC § 1692e(5), which prohibits threatening to take any action that cannot legally be taken or that is not intended to be taken;

**(e)** 1692e(10), which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt;

**(f)** 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt; and

**(g)** 15 USC § 1692f(1), which prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## VIII. EIGHTH CAUSE OF ACTION

### Tortious Interference

**66.** **Common facts and allegations** — Paragraphs 1 through 23, and paragraphs 39 through 59, are incorporated by reference on behalf of the Class B Plaintiffs.

67. At all times relevant, and prior to Defendants' restricting access and collection efforts, WAHLERT and the Class B Plaintiffs had a valid expectancy, as easement owners, and as third-party beneficiaries of the 1961 deed from McINTOSH to the LLPOA to the Loch Lomond lake property, subject to expressly declared, perpetual pre-1957 easement rights (Exhibit E).

68. At all times relevant, and prior to Defendants' restricting access and collection efforts, the Defendants knew of that legitimate expectancy and all contracts and conveyances pertinent thereto, including the 1957 Charter and the 1961 Deed.

69. That, in violation of the aforementioned, the Defendants have intentionally interfered with WAHLERT's and the Class B Plaintiffs' legitimate expectancy of free and unencumbered lake access, causing a breach or termination of their legitimate expectancy and interfering with their relationship to the Charter and Deed discussed supra.

70.     The Defendants' interference has damaged WAHLERT and the Class B Plaintiffs, both financially and by denying them the quiet enjoyment of their easement rights and incurring substantive costs and burdens of contesting Defendants' wrongful conduct.

71.     At no time did Defendants have any legal justification whatsoever to attempt to charge Plaintiffs assessment fees, to restrict lake access or to deny to Plaintiffs the quiet enjoyment of their easement rights.

## I

## XI. NINTH CAUSE OF ACTION

### Trespass Upon an Easement

72.     **Common facts and allegations** — Paragraphs 1 through 23, and paragraphs 39 through 59, are incorporated by reference on behalf of the Class B Plaintiffs.

73.     At all times relevant, WAHLERT and the Class B Plaintiff were the owners of an easement to Loch Lomond and had the right of use of their easement, including any use that was reasonably necessary for full enjoyment of the premises.

74.     Defendants, by imposing unlawful fees, restricting access, and making harassing collection efforts, have caused WAHLERT and the Class B Plaintiffs aggravation, time and effort, as well as pecuniary injuries, and have unreasonably deprived WAHLERT and the Class B Plaintiffs of the quiet enjoyment of their property.

74.     Defendants, because of the forgoing, have committed Trespass upon the Easement owned by WAHLERT and the Class B Plaintiffs.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor, against Defendants and award the following:

> (A)     Statutory damages as provided under the FDCPA, 15 U.S.C. §
> 1692k;

(B)     Actual damages in an amount to be proven at trial;

(C)     Punitive or exemplary damages;

(D)     Reasonable attorney's fees, litigation expenses and costs incurred in bringing this action;

(E)     An Order enjoining Defendants from restricting access to Loch Lomond, seeking fees, or otherwise impeding the use and enjoyment of the Defendants' Easements;

(F)     Any other relief that this Court deems appropriate and just under the circumstances.

### *Plaintiff Demands A Trial By Jury*

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL  60602
(312) 782-5808

Christopher Kruger
Werner Gruber
KRUGER & GRUBER, LLP
500 N. Michigan Ave. Suite 600
Chicago, IL 60611
 (773) 663-4949

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them.  These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

By: /s/ Lance A. Raphael