UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.G. WAHLERT, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 1:17-cv-08055 |
| ) | |
| KOVITZ SHIFRIN NESBIT, A PROFESSIONAL ) | |
| CORPORATION, KALMAN MANAGEMENT ) | |
| INC., and LOCH LOMOND PROPERTY OWNERS ) | |
| ASSOCIATION, ) | |

### FIRST AMENDED COMPLAINT

### I. INTRODUCTION

1. Plaintiff J.G. Whalert demands a jury and brings this putative class action to remedy an unlawful scheme engaged in by debt-collection law firm Kovitz Shifrin Nesbit (KSN), property manager Kalman Management Inc. (Kalman) and Loch Lomond Property Owner's Association (LLPOA), a voluntary beneficial organization that owns a lake and parks subject to perpetual easements owned by lot owners like Plaintiff.

2. This case is brought on behalf of Plaintiff and similarly situated persons in the Loch Lomond Community consisting of subdivisions of the first subdivision Loch Lomond, Loch Lomond Unit No. 2 and Loch Lomond No. 3, who own easement rights running with the land to Loch Lomond lake and parks in Mundelein, Illinois.

3. On October 22, 2015, KSN and the LLPOA recorded a document that attempted to convert this voluntary association into a homeowner's association that could collect assessments from property owners who had easements to the lake.

4. On November 7, 2016, KSN then sent a debt collection letter to Plaintiff and class members attempting to collect bogus debts related to the false document recorded on October 22, 2015. See Exhibit 7.

5. As explained by name partner of KSN, Jordan Shifrin, in a 2010 ICLE publication, in a manner consistent with the holding in *Lakeland Property Owners Association v. Lar*son, 121 Ill.App.3d 805, 459 N.E.2d 1164, (Ill. App. 2nd Dist. 1984),

> "In order to create a ... homeowners' association, **there must be a unanimous subscription to an underlying document by the owners of the property** ...Anything less creates a "voluntary" association in which membership is not mandatory and rules are not enforceable against nonmembers." (emphasis added)
> — Attorney Jordan I. Shifrin of KOVITZ SHIFRIN NESBIT (Illinois Condominium Law, 10.6, ICLE 2010 edition)

6. There was never any unanimous subscription to an underlying document by the owners of the subject property owned by Plaintiff and the class members.

7. Plaintiff contends that the LLPOA and its agents KSN and Kalman have no right to collect money as a homeowner's association and also have no right to interfere with the easement rights of Plaintiff and class members.

8. Kalman and the LLPOA have taken active measures to block access to the lake by maintaining gates that block free access to the lake and parks by perpetual easement owners.

9. Plaintiff brings a claim under the Fair Debt Collection Practices Act ("FDCPA) against Defendant KSN for mailing debt collection letters to easement owners for bogus debts to Plaintiff and similarly situated subclass members on or around November 7, 2016.

10. Plaintiff also brings state law claims for tortious interference, trespass to easements, slander of title, private nuisance and violation of the Illinois Consumer Fraud and Deceptive Practices Act against Kalman, LLPOA and KSN.

11. Plaintiff and the class members have lost use of their easements to Loch Lomond lake and parks and have been subjected to malicious debt-collection harassment.

12. Plaintiff and the class members seek damages, including loss of use of the easement, loss of equity in their property due to the physical obstruction of their easement rights which run with the land and form an inalienable part of their property interests and the lien put on their property, punitive damages and equitable relief.

## II. JURISDICTION and VENUE

13. This court has original jurisdiction in this action because the matters in dispute involve federal laws arising under the FDCPA, 15 USC § 1692 et. seq.

14. In addition to primary federal jurisdiction, this court has supplemental jurisdiction pursuant to 28 USC § 1367 over the state claims because they arise from the same nexus of facts as the federal claim.

15. Venue is proper in this District under 28 USC § 1391(b)(2) and 18 USC 1965(a) because, as described more fully below, all of the actions of the Defendants giving rise to the injuries complained of occurred in this District.

## III. PARTIES

16. Plaintiff J.G. Wahlert is a lot owner in the Loch Lomond Community by virtue of his ownership of a lot in Loch Lomond No. 2 and therefore owns a perpetual easement to Loch Lomond lake and parks.

17. Defendant KSN is a debt collection law firm located in Illinois which acted as a debt collector for Defendant LLPOA.

18. Defendant Kalman is a property manager located in Illinois.

19. Defendant LLPOA is a voluntary membership association that owns Loch Lomond lake and parks in Mundelein Illinois.

3

## III. CLASS ALLEGATIONS

20. This case is brought on behalf of a "Perpetual Easement Owner" class and a FDCPA subclass. The class is defined as owners of property in the Loch Lomond Subdivisions created in 1954, 1955 and 1956, with perpetual easements to the Loch Lomond parks and lake. The subclass consists of all class members who received a collection letter substantially similar to Exhibit A from Defendant KSN since November 2016.

21. The class and subclass meet the requirements of Rule 23.

22. The class is so numerous that joinder of class members is impracticable. The class consists of hundreds of lot owners and the subclass, on information and belief, consists of dozens of consumers.

23. There are questions of law or fact common to the class including:

(A) Whether KSN violated the FDCPA by attempting to collect debts not authorized by law or any contract from subclass members;

(B) Whether Kalman and the LLPOA committed a trespass to class members' easement by maintaining gates that block free access to the lake;

(C) Whether the LLPOA and KSN committed slander of title by recording the 2015 Declaration;

(D) Whether the LLPOA and KSN are maintaining a private nuisance by maintaining gates that block easement owners from having free access to the entrance-way parks to the Loch Lomond lake and the Loch Lomond lake;

(E) Whether the LLPOA, Kalman and KSN have tortiously interfered with class members' rights;

(F) Whether KSN, Kalman and the LLPOA have violated the Illinois Consumer Fraud and Deceptive Practices Act.

4

24. The claims of the class representatives are typical of those of the class and subclass.

25. The class representatives will fairly and adequately protect the interests of the class. Wahlert has no conflicts with other class members and has retained counsel with experience in class actions.

26. There are common questions of law or fact that predominate over any individual class member's questions and a class action is superior to other methods of adjudication.

## IV. FACTUAL ALLEGATIONS

27. In the 1950s, Arthur T. McIntosh & Company developed property in Mundelein, Illinois for the purpose of selling homes around Loch Lomond lake.

28. As part of the development, Arthur T. McIntosh & Company recorded three documents entitled Declaration of Restrictions and Easements. See Exhibits 1,2 and 3.

29. These documents establish perpetual easements "in, upon, over and across the Lake" and "in, upon, over and across the real estate" identified in the declarations as parks.

30. Notably, the Declaration does not require payment of any assessments to use the easement.

31. In 1957, after the easements has been granted, the LLPOA was chartered by 10 lot owners. See Exhibit 4.

32. The purpose of the association was stated, "To promote the civic, educational, patriotic, economic, social and charitable purpose of the community known as Loch Lomond, to bring together the members of said community to the end that the strength of their common efforts and unity will result in benefit to all."

33. The LLPOA charter did not create a homeownes' association.

34. The LLPOA was created as a voluntary membership association.

5

35. In 1961, Arthur T. McIntosh & Company deeded ownership of the Lake and Park to the LLPOA subject to easements of lot owners. See Exhibit 5.

36. This act did not create a homeowners' association.

37. Over the years, the LLPOA sought to assert itself as a mandatory membership association by recording various documents.

38. The LLPOA knew that it had no right to collect the dues under the law but persisted in its efforts.

39. The LLPOA started blocking access to the lake by maintaining gates to the entrance-way parks to the lake and the lake.

40. These efforts culminated in 2015 when KSN and the LLPOA recorded a new document entitled, "Amended and Restated Declaration of Restrictions and Easements for Loch Lomond Property Owners Association". See Exhibit 6.

41. This document falsely stated that the LLPOA was, "incorporated under the laws of the State of Illinois to administer and enforce the covenants, conditions, restrictions, easements, charges and liens,…".

42. The 1957 charter makes it clear that the LLPOA was incorporated as a voluntary membership association not to administer and enforce land use restrictions.

43. The 2015 Declaration was not passed by a unanimous vote of the subject property owners.

44. The 2015 Declaration purported to mandate payment of assessments and allowed for late fees, costs and reasonable attorney's fees against those who did not pay the assessments.

45. The 2015 Declaration purported to create a lien and personal obligation upon each owner of the subject property which, "shall pass to his successors in title and shall also constitute a lien on the land effected thereby until fully paid."

6

46. The 2015 Declaration purported to give the right to the LLPOA Board, "the right to declare said default a forcible detainer of the Dwelling and shall have the right,.. to enter and take possession of the Dwelling from any defaulting owner."

47. KSN and the LLPOA recorded this document with knowledge that there was never a unanimous subscription to any property owners' association and that the original easements do not require mandatory membership in the LLPOA or mandate payment of assessments.

48. Despite this knowledge, KSN sent a collection letter to subclass members that demanded payment of assessments and attorney's fees on or about November 7, 2016. See Exhibit 7.

49. To this date, the LLPOA and Kalman continue to obstruct access to the Lake by maintaining gates.

## COUNT I – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT AGAINST KSN, KALMAN AND THE LLPOA

50. Plaintiff incorporates paragraphs 1-49 into this Count.

51. This claim is brought on behalf of the class.

52. Defendants committed multiple deceptive acts and unfair practices that have caused economic damages to Plaintiff and the class as described above.

53. Defendants Kalman and the LLPOA have engaged in the unfair practice of blocking access to the lake by maintaining gates to the entranceway parks to the lake and the lake.

54. This practice has caused economic loss to class members in the form of loss of free use of the lake which is granted in the easements to the property.

55. This practice is oppressive, harms consumers and violates the common law of trespass and private nuisance.

56. Defendants KSN and the LLPOA have engaged in the deceptive practice of recording a false document on or about October 22, 2015 that misrepresents the LLPOA is a mandatory property owners' associations rather than a voluntary membership association and misrepresents that class members are obligated to pay assessments plus late fees, costs and attorney's fees and are subject to forcible detainer actions and loss of their homes for failure to pay such assessments.

57. Defendants KSN and the LLPOA knew that this document was false but recorded it anyway.

58. When Defendant KSN and the LLPOA maliciously recorded its false document with the Lake County Recorder of Deeds in preparation of its planned effort to collect fictitious debts from easement owners in the Loch Lomond community, it intended to that class members rely on the deception and cause harm and did cause harm by burdening each class members with an unlawful continuing "assessment lien" and lowering the equity in each non-consenting easement owner's property.

59. Defendants acts occurred in the course of trade and commerce because the acts and practices relate to the distribution of property in the Loch Lomond subdivisions and indirectly impact the sale of property in this state.

## COUNT II – TORTIOUS INTERFERENCE AGAINST THE LLPOA, KALMAN AND KSN

60. Plaintiff incorporates paragraphs 1-59 into this Count.

61. This claim is brought on behalf of the class.

62. Defendants KSN, Kalman and the LLPOA knew of the rights of Plaintiff and class members created by the easement and contract rights.

8

63. Defendants have tortiously interfered with those rights by blocking access to the easement, recording false documents and collecting and attempting to collect debts that are not authorized by law or contract.

64. Plaintiff and the class have suffered damages in the form of loss of free use and loss of equity as a result of the tortious interference.

### COUNT III – PRIVATE NUISANCE AGAINST THE LLPOA, KALMAN AND KSN

65. Plaintiff incorporates paragraphs 1-64 into this Count.

66. This claim is brought on behalf of the class.

67. Defendants KSN, Kalman and the LLPOA have substantially invaded the interest in the use and enjoyment of Plaintiff and class members' property by means of blocking access to the easement, recording false documents and unlawful collection efforts.

68. Defendants have caused damages to Plaintiff and class members in the form of loss of free use of the entrance-way parks to the lake and the lake as a result of this nuisance.

### COUNT IV –SLANDER OF TITLE AGAINST THE LLPOA AND KSN

69. Plaintiff incorporates paragraphs 1-68 into this Count.

70. This claim is brought on behalf of the class.

71. Defendants KSN and LLPOA committed slander of title against Plaintiff and class members when they recorded the Declaration on October 22, 2015.

72. Defendants have caused damages to Plaintiff and class members as a result of this slander in the form of loss of equity.

### COUNT V – TRESPASS TO EASEMENT AGAINST KALMAN AND THE LLPOA

73. Plaintiff incorporates paragraphs 1-72 into this Count.

74. This claim is brought on behalf of the class.

75. Defendants Kalman and the LLPOA have committed trespass to easement by blocking the access of Plaintiff and class members by manintain gates that block free access to the entrance way parks to the lake and the lake.

76. Plaintiff and the class have suffered damages in the form of loss of free use as a result of the trespass.

## COUNT VI – FDCPA AGAINST KSN

77. Plaintiff incorporates paragraphs 1-76 into this Count.

78. This claim is brought on behalf of the subclass.

79. KSN is a debt collector.

80. KSN regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

81. KSN regularly attempts to collect debts such as purported assessments that are allegedly in default.

82. KSN attempted to collect allegedly defaulted obligations of a consumers to pay money arising out of a transaction in which the property which was the subject of the transaction is primarily for personal, family, or household purposes from Plaintiff and subclass members.

83. KSN sent a form collection letter dated November 7, 2016 to Plaintiff and subclass members that sought to collect alleged consumer debts in default.

84. In that letter, KSN sought to collect debts purportedly created by the false debt instrument recorded on October 22, 2015 by KSN and Kalman.

85. This collection effort caused damages to Plaintiff and subclass members by causing an in terrorem effect by threatening a lawsuit based upon a false debt instrument.

86. The collection letter of KSN violated the FDCPA.

87. KSN violated 15 USC § 1692e, which prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt.

88. KSN violated 15 USC § 1692e(2)(A), which prohibits the false representation of the character, amount, or legal status of any debt.

89. KSN violated 15 USC § 1692e(5), which prohibits threatening to take any action that cannot legally be taken or that is not intended to be taken;

90. KSN violated 1692e(10), which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt;

91. KSN violated 15 USC § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt; and

92. KSN violated 15 USC § 1692f(1), which prohibits the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

93. Plaintiff and subclass members seek damages against KSN for its unlawful collection efforts.

WHEREFORE, Plaintiff prays for the following relief:

A. Certify a class of all individual who own lots in subdivision Loch Lomond, Loch Lomond Unit No. 2 and Loch Lomond Unit 3;

B. Certify a subclass of all individual who own lots in subdivision Loch Lomond, Loch Lomond Unit No. 2 and Loch Lomond Unit 3 who received a form collection letter from KSN;

C. Award actual, statutory and punitive damages to the class and subclass;

D. Award costs and reasonable attorneys' fees to Class Counsel.

                                        Respectfully Submitted,
                                        Plaintiff J.G. Wahlert

                                        <u>/s/Mark T. Lavery</u>
                                        By His Attorney

Mark T. Lavery
Langone, Batson & Lavery LLC
17 N. Wabash, Suite 500
Chicago, Illinois 60602
312-344-1945

12