IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.G. WAHLERT, | )<br>) |
| Plaintiff, | ) Case No. 17 C 8055<br>) |
| v. | )<br>) Judge Robert W. Gettleman |
| KOVITZ SHIFRIN NESBIT, a professional corporation; KALMAN MANAGEMENT, INC., and LOCH LOMOND PROPERTY OWNERS ASSOCIATION, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff J.G. Wahlert, on behalf of himself and all others similarly situated, has brought a six count amended putative class action complaint against defendants Kovitz, Shifrin, Nesbit ("KSN"), Kalman Management, Inc. ("Kalman"), and the Loch Lomond Property Owners Association ("LLPOA"). Count I asserts a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 et seq. against all three defendants. Counts II and III, again brought against all three defendants, allege a claim for "tortious interference" and private negligence. Count IV is brought against LLPOA and KSN for slander of title. Count V alleges trespass to easement against Kalman and LLPOA. Count VI is brought solely against KSN for violating the Fair Debt Collection Practices Act ("FDCPA"). Kalman has answered the complaint. KSN and LLPOA have brought separate motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, those motions are granted in part and denied in part.

# BACKGROUND[1]

In the 1950s, Arthur T. McIntosh & Co. developed property in Mundelein, Illinois for the purposes of selling homes around Loch Lomond Lake. The company recorded three documents entitled "Declaration of Restrictions and Easements," which together established perpetual easements "in, upon, over and across the lake," and "in, upon, over and across the real estate," identified as two parks. The Declarations of Restrictions were recorded in 1954, 1955 and 1956. None of the recorded documents required payment of any assessments to use the easements.

In 1957, the LLPOA was chartered and incorporated by ten lot owners. As listed in the Articles of Incorporation, their purpose was "to promote the civic, education, patriotic, economic, social and charitable purposes of the community known as Loch Lomond, to bring together the members of said community to the end that the strength of their common efforts and unity will result in greater benefit to all." Plaintiff alleges that the Charter makes clear that the LLPOA was incorporated as a voluntary membership association not to administer and enforce land use restrictions. In 1961, the Arthur T. McIntosh & Co. deeded ownership of the lake and parks to the LLPOA subject to the easements of the lot owners.

In 1986 the LLPOA recorded a document titled "Loch Lomond Property Owners Association Public Notice of Annual Assessment," which purportedly gave notice that it owned

---

[1] The factual background is taken from the allegations of plaintiff's complaint which are presumed true for purposes of this motion, Firestone Financial Corp. v. Meyer, 796 F.3d 822, 826 (7th Cir. 2015), as well as from documents of which the court may take judicial notice, such as an earlier state court complaint brought by plaintiff against LLPOA, and publicly recorded documents. Watkins v. U.S., 854 F.3d 947, 950 (7th Cir. 2017)

the lake and parks, and that use thereof would be restricted "only to those whose assessments are currently paid, and therefore are members in good standing of the [LLPOA]."

Plaintiff purchased his lot in 1991, after public notice of annual assessments had been recorded. According to plaintiff, over the years, the LLPOA sought to assert itself as a mandatory membership association by recording various documents, and knew that it had no right to collect dues under the law but persisted in its efforts to do so, including blocking access to the lake by maintaining gates to the entrance-way parks and the lake.

In 2011, plaintiff sued the LLPOA in the Circuit Court of Lake County, Illinois, seeking a declaration that the LLPOA is a voluntary membership association and is not empowered to assess dues against plaintiff or obstruct plaintiff's exercise of his easement rights or to threaten to or file liens against plaintiff's property for failure to pay dues. That case was ultimately voluntarily dismissed.

According to the instant complaint, LLPOA's efforts to collect unlawful dues culminated in 2015 when KSN and LLPOA recorded a new document entitled "Amended and Restated Declaration of Restrictions and Easements for Loch Lomond Property Owners Association." Plaintiff alleges that this document falsely states that the LLPOA was "incorporated under the laws of the State of Illinois to administer and enforce the covenants, conditions, restrictions, easements, charges and liens . . .," when the 1957 charter makes clear that the LLPOA was incorporated as a voluntary membership association, not to administer and enforce land use restrictions.

Plaintiff further alleges that the 2015 Declaration was not passed by unanimous vote of the subject property owners, and that it purports to mandate payment of assessments and allows

3

for late fee costs and attorney's fees against those who do not pay.  According to plaintiff, the Declaration also purports to create a lien and personal obligations upon each owner of the subject property which "shall pass to his successors in title and shall also constitute a lien on the land affected thereby until fully paid."  Finally, the 2015 Declaration purports to give the LLPOA Board "the right to declare said default a forceable detainer of the Dwelling and shall have the right, . . . to enter and take possession of the Dwelling from any defaulting owner."

Plaintiff alleges that KSN and LLPOA recorded this document despite knowing that there was never a unanimous subscription to any property owner's association and that the original easements to not require mandatory membership in the LLPOA or mandate payment of assessments.  Despite this knowledge, on November 7, 2016, KSN sent a collection letter to plaintiff and others that demanded payment of assessments and attorney's fees, and LLPOA and Kalman continued to obstruct access to the lake.

## **DISCUSSION**

Defendants KSN and LLPOA have each moved under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555-56 (2007).  The complaint "must give enough details about the subject-matter of the case to present a story that holds together."  Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

Both KSN and LLPOA argue that the state law claims are barred by their applicable statutes of limitations, which are three years for the ICFA claims and five years for the tortious interference, private nuisance, slander of title claims and trespass claims. See 815 ILCS 505/10a(e); 735 ILCS 5/13-205. Defendants argue that plaintiff has been subject to the alleged improper assessments since he bought his property 27 years ago and has been aware of his claims since at least 2011 when he filed the state court action. Because "[g]enerally a limitations period begins when facts exist which authorize one party to maintain an action against another," defendants argue that all of the state law claims are barred. Bank of Ravenswood v. City of Chicago, 307 Ill.App.3d 161, 167 (1st Dist. 1999).

A statute of limitations is an affirmative defense that ordinarily must be pleaded and proved by the defendant. Fed. R. Civ. P. 8(c)(1); Jay E. Hayden Foundation v. First Neighbor Bank, N.A., 610 F.3d 382, 383 (7th Cir. 2010). "Complaints need not anticipate defenses and attempt to defeat them." Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). As a result, the Seventh Circuit has often held that Rule 12(b)(6) is not designed for motions under Rule 8(c)(1). Id. (and cases cited therein). Nonetheless, "If it is plain from the complaint that the [statute of limitations] defense is indeed a bar to the suit dismissal is proper without further pleading." Jay E. Hayden, 610 F.3d at 383. The dismissal should be on the pleadings under Rule 12(c), but that amounts "to the same thing as a dismissal under Rule 12(b)(6)." Richards, 696 F.3d at 637. Unless, however, "the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." Foss v. Bear Stearns & Co., 394 F.3d 540, 542 (7th Cir. 2005).

In the instant case, defendants essentially argue that the factual background alleged in the complaint, along with the 2011 state court complaint of which the court can and does take judicial notice, demonstrate such an ironclad defense because it is obvious that plaintiff was aware of his claim that LLPOA was improperly attempting to assess dues and restrict access to the lake well beyond the statute of limitations.

The court agrees that the 2011 complaint demonstrates that plaintiff was aware of certain claims. But, the instant complaint is based predominately on actions that have occurred well after that complaint was dismissed. In particular, the instant complaint alleges that these defendants recorded the 2015 "Amended and Restricted Declaration of Restrictions and Easements of [LLPOA]." The state law counts are premised on this allegedly false recording. This amounts to a new violation, which has occurred within each applicable statute of limitations. Consequently, defendants' motions to dismiss the state law counts based on statute of limitations is denied.

KSN next argues that Count VI, which asserts a claim against it for violation of the FDCPA by knowingly misrepresenting to plaintiff in the collection letter that his obligations to pay assessments constitutes an enforceable debt, must also be dismissed. KSN argues that this count cannot stand because plaintiff has not identified a viable state-law challenge to the enforceability of his obligation to pay assessments because all of the state claims are barred by the statute of limitations. Because the court has rejected defendants' statute of limitations arguments, KSN's challenge to Count VI also necessarily fails.

KSN also argues that it cannot be held liable for assisting its client, LLPOA, in engaging in allegedly tortious conduct in seeking to enforce plaintiff's obligation to pay his assessments.

The court agrees.  "In Illinois, an attorney owes a duty of care only to his client and not to third parties."  Sabrina Roppo v. Travelers Commercial Insurance Co., 869 F.3d 568, 592 (7th Cir. 2017).  Although incorrect advice to a client might "cause that client to become liable to a third party . . . it does not follow that the attorney would also be liable to that party."  Shott v. Glover, 109 Ill.App.3d 230, 234 (1st Dist. 1982).  Imposition of such liability would lead to "the undesirable effect of creating a duty to third parties which would take precedence over an attorney's fiduciary duty to his client.  Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect."  Id. at 234-35.

Nonetheless, the privilege accorded an attorney when rendering advice to a client is not absolute. Id.  A plaintiff, for example, can state a claim for tortious interference with contract against an attorney if the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist.  Id.  Such an allegation must, however, indicate the attorney's desire to harm the plaintiff, "which is independent of and unrelated to the attorney's desire to protect his client."  Id.

Plaintiff has made no such allegations in the instant case.  And, as KSN points out, it is new to the dispute between plaintiff and LLPOA.  Nothing in the complaint suggest that KSN was acting in any manner other than for the purpose of representing its client's interests.  Consequently, the court grants KSN's motion to dismiss Counts I through IV.

Finally, LLPOA argues that Count I, which alleges a violation of the ICFA, fails to state a claim because plaintiff has not alleged that he is a consumer or that LLPOA's alleged wrongful actions have some relation to consumer concerns.  The court agrees.

The ICFA prohibits the use of deceptive acts or practices in the conduct of trade or commerce. 815 ILCS 505/2. To state a claim under the ICFA, the complaint must allege: (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; (4) actual damages to plaintiff; and (5) proximately caused by the deception. Freedom Mortgage Corp. v. Burnham Mortgage, Inc., 720 F. Supp.2d 978, 1003 (N.D. Ill. 2010) (citing Avery v. State Farm Mut. Auto Ins. Co., 2016 Ill.2d 100, 180 (2005).

Under the ICFA "consumer" is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of a household." 815 ILCS 505/1(e). Merchandise "includes any objects, wares, goods, commodities, intangible, real estate situated outside State of Illinois, or services" 815 ILCS 505/1(b). The terms trade and commerce "mean the advertising, offering for sale, sale, distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, a thing of value wherever situated, and shall include any trade or commerce directly effecting the people of [Illinois]." 815 ILCS 505/1(f).

In the instant case, plaintiff is obviously not a "consumer" with respect to LLPOA. Plaintiff has not alleged that he has purchased any merchandise or services from LLPOA. As plaintiff points out, however, the ICFA is not limited to "consumers" or "purchasers." "On the contrary, Section 10(a) of the Act states that 'any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person.'" Weigel v. Stork Craft Mfg., Inc., 780 F.Supp.2d 691, 693 (N.D. Ill. 2013).

Plaintiff's claim against LLPOA does not, however involve trade or commerce as it is defined under the Act. Despite plaintiff's attempt to argue otherwise, the claims in this case do not involve a "real estate transaction" in any manner.

Nor can plaintiff satisfy the "consumer nexus test" which is used to analyze whether a plaintiff can bring an ICFA claim when the dispute involves parties who are not consumers of each other's products or services. Freedom Mortgage, 720 F.Supp.2d at 1004. To satisfy this test, plaintiff must allege facts to show that the conduct involves trade practices directed to the market generally or otherwise relates to consumer protection concerns. Id. Under the test, plaintiff must plead and otherwise prove: (1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendants' representations . . . concern consumers other than plaintiff; (3) how defendants' particular breach involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers. Id.

Plaintiff has not pled any facts to plausibly suggest that his actions were akin to a consumer's or how defendants' actions involve consumer protection concerns. As LLPOA argues, the instant dispute is over competing property rights. Nothing about the instant dispute or LLPOA's alleged improper actions involve or were directed at the market generally. Consequently, the court concludes that Count I fails to state a claim.

## **CONCLUSION**

For the reasons described above, KSN's motion to dismiss (Doc. 55) is granted as to Counts I through IV and denied as to Count VI. LLPOA's motion to dismiss (Doc. 58) is granted as to Count I and denied in all other respects. KSN and LLPOA are ordered to answer

the counts remaining against them on or before March 1, 2019. The parties are directed to submit a joint status report using this court's form on or before March 8, 2019. This matter is set for a report on status on March 20, 2019, at 9:10 a.m.


**ENTER:** **February 7, 2019**

_____
**Robert W. Gettleman
United States District Judge**