# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| J.G. WAHLERT on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | No. 17-cv-8055 |
| KOVITZ SHIFRIN NESBIT, a professional corporation, KALMAN MANAGEMENT, INC., and LOCH LOMOND PROPERTY OWNERS ASSOCIATION, | Judge Robert W. Gettleman |
| | Magistrate Judge Gabriel A. Fuentes |
| Defendants. | |

## DEFENDANTS' MOTION TO STRIKE
## THE EXPERT REPORT OF JEFFREY ROTHBART

Molly A. Arranz, ARDC # 6281122
John C. Ochoa, ARDC # 6302680
Michael M. Chang, ARDC #6323721
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

*Attorneys for Defendants Kalman Management Inc. and Loch Lomond Property Owners Association*

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

BACKGROUND .................................................................................................2

LEGAL STANDARD ..........................................................................................3

ARGUMENT ......................................................................................................4

I.     On Balance, Rothbart's Opinions Consist of Improper
Legal Conclusions and Should Be Stricken.................................................5

II.    Rothbart's Damages Opinions Are Grounded on Insufficient Facts, Data, and
Lack Any Reliable Principles or Methods; Thus, They Should Be Stricken..........8

    A.    Rothbart's Opinion About Access to The
Lake and Parks Is Inadmissible as It Merely
Parrots Plaintiff's Initial Damages Model ....................................9

    B.    The Opinion About Inability to Sell Is
Based on No facts or Data. ........................................................11

    C.    Rothbart's Opinion on Abatement in Value
To Residences Lacks Admissible Foundation
And Should Be Stricken...............................................................12

    D.    Plaintiff's Opinions Here Suffer From
the Same Deficiencies as in *Oak Creek*, Where
the Court Excluded His Expert Report .........................................13

III.    Rothbart Is Unqualified to Proffer the "Expert" Opinions He Advances as He
Lacks Experience in Residential Real Estate........................................................14

CONCLUSION ....................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.*,
608 F. Supp. 2d 1018 (N.D. Ill. 2009). ........................................................................ 13

*Apotex Corp. v. Merck & Co., Inc.*,
No. 04 C 7312, 2006 WL 1155954 (N.D. Ill. Apr. 25, 2006)...................................... 7

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) ........................................................................................ 14

*Chen v. Yellen*,
No. 14 C 50164, 2021 WL 4192078 (N.D. Ill. Sept. 15, 2021).................................... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)................................................................................................. 1, 4

*Dolmage v. Combined Ins. Co. of Am.*,
No. 14 C 3809, 2017 WL 1754772, at *4 (N.D. Ill. May 3, 2017) .............................. 6

*Ervin v. Johnson & Johnson, Inc.*,
492 F.3d 901 (7th Cir. 2007) ........................................................................................ 4

*Farmer v. DirectSat USA, LLC*,
No. 08 CV 3962, 2013 WL 1195651 (N.D. Ill. Mar. 22, 2013) ................................... 8

*Ferguson v. City of Chicago*,
No. 13 C 4084, 2016 WL 3226529 (N.D. Ill. June 13, 2016) ...................................... 8

*Gayton v. McCoy*,
593 F.3d 610 (7th Cir. 2010) ................................................................................. 14, 15

*Georgia-Pac. Consumer Prod. LP v. Kimberly-Clark Corp.*,
No. 09 C 2263, 2010 WL 1334714 (N.D. Ill. Mar. 31, 2010) ...................................... 7

*Good Shepherd Manor Found. Inc. v. City of Momence*,
323 F.3d 557 (7th Cir. 2003) ........................................................................................ 6

*Haley v. Kolbe & Kolbe Millwork Co.*,
No. 14-CV-99-BBC, 2016 WL 3190286 (W.D. Wis. June 7, 2016)........................... 11

*Kleen Prod. LLC v. Int'l Paper*,
No. 10 C 5711, 2017 WL 2362567 (N.D. Ill. May 31, 2017). .................................................. 15

*Lang v. Kohl's Food Stores, Inc.*,
217 F.3d 919 (7th Cir. 2000) ....................................................................................................... 8

*Levin v. Grecian*,
No. 12 C 767, 2013 WL 3669742 (N.D. Ill. July 12, 2013) ........................................................ 10

*Mihailovich v. Laatsch*,
359 F.3d 892 (7th Cir. 2004) ...................................................................................................... 4

*Muniz v. Rexnord Corp.*,
No. 04 C 2405, 2006 WL 5153078 (N.D. Ill. Nov. 2, 2006)................................................... 6, 7

*Myers v. Ill. Cent. R.R. Co.*,
629 F.3d 639 (7th Cir. 2010) ...................................................................................................... 4

*Oak Creek Inv. Properties, Inc. v. Am. Elec. Power Serv. Corp.*,
No. 4:18-CV-4009, 2020 WL 5089391 (W.D. Ark. Aug. 28, 2020)........................................... 13

*Obrycka v. City of Chicago*,
792 F. Supp. 2d 1013 (N.D. Ill. 2011). ................................................................................. 14, 15

*RLJCS Enterprises, Inc. v. Pro. Ben. Tr. Multiple Emp. Welfare Ben. Plan & Tr.*,
487 F.3d 494 (7th Cir. 2007) ...................................................................................................... 6

*Roundy's Inc. v. N.L.R.B.*,
674 F.3d 638 (7th Cir. 2012) ................................................................................................... 5, 6

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
969 F.2d 410 (7th Cir. 1992) ..................................................................................................... 13

*Sommerfield v. City of Chicago*,
254 F.R.D. 317 (N.D. Ill. 2008)............................................................................................... 7, 9

*Tyus v. Urb. Search Mgmt.*,
102 F.3d 256 (7th Cir. 1996). ..................................................................................................... 3

*U.S. v. Blount*,
502 F.3d 674 (7th Cir. 2007). ..................................................................................................... 6

*U.S. E.E.O.C. v. Rockwell Int'l Corp.*,
60 F. Supp. 2d 791 (N.D. Ill. 1999) ...................................................................................... 9, 11

*U.S. v. Sinclair,*
74 F.3d 753 (7th Cir. 1996) ................................................................................................. 5

*Van v. Ford Motor Co.,*
332 F.R.D. 249 (N.D. Ill. 2019) .......................................................................................... 7

*Ventriloscope v. MT Tool & Mfg.,*
No. 16 C 5298, 2019 WL 12528939 (N.D. Ill. Feb. 22, 2019) ...................................... 10

**Rules**

FED. R. EVID. 702 ........................................................................................................... 1, 3, 5

FED. R. EVID. 704 ................................................................................................................. 5

**Other Authorities**

Committee Note to the 2000 Amendments of Rule 702 ................................................... 14

NOW COME, Defendants, Loch Lomond Property Owners Association ("LLPOA") and Kalman Management, Inc. ("Kalman") (collectively, "Defendants"), through their counsel, and respectfully move to strike the Expert Report and exclude testimony of Jeffrey Rothbart under Fed. R. Evid. 702. In support, Defendants state:

## INTRODUCTION

Plaintiff's putative expert witness, Jeffery Rothbart, provides a report in this case that is the prototype for inadmissibility. His opinions fall well-short of the requisites of Federal Rule of Evidence 702 and *Daubert* because, in part, his testimony and opinions are not based on sufficient facts, and he nowhere employs reliable principles and methods for his opinions. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993).

The bulk of Rothbart's Report (Dkt. #210-30 at 1-8, attached hereto as **Exhibit A**, cited herein as "Rothbart Report"), which sits at the heart of Plaintiff's opposition to Defendants' Summary Judgment Motion, consists of improper legal opinion and conclusions, where he parrots Plaintiff's legal theories. Notably, Rothbart has no pertinent legal training of his own and, instead, relies on one-paragraph from an IICLE article on property law and a single appellate court decision hand-picked by Plaintiff's counsel. Rothbart's opinions are, in reality, Plaintiff's opposition brief copied into an expert report with an attempt to give the Plaintiff's case a thin veneer of "expert" credibility.

Rothbart also attempts to opine on the purported damages from Defendants' alleged "slander of title." (*See* Rothbart Report at 6.) But, under cross-examination, Rothbart admitted his opinions are not based on the facts or data in this case. He conceded he knows nothing about Loch Lomond lake or the two nearby lakes he used for comparison, and he could not provide the analysis he conducted to reach his opinions. Moreover, it became clear during Rothbart's

deposition that despite his experience in commercial real estate, he lacks the necessary experience in residential real estate, or matters involving homeowner's associations, thus providing an additional independent reason to strike Rothbart's Report.

## BACKGROUND

### I.     Rothbart's Stated Qualifications.

Jeffrey Rothbart works at Stack Real Estate, LLC. (Rothbart Resume at 1, Dkt. #210-30 at 11-18, attached hereto as **Exhibit B**, cited herein as "Rothbart Resume.") He has provided expert testimony in over 50 separate cases, but his resume indicates that his experience lies in *commercial*, not *residential* real estate. (*See* Rothbart Resume at 3-6.) Prior to Stack Real Estate, LLC, he had a real estate investment firm "focused on the acquisition of U.S. commercial real estate[.]" (*See id.*) And, before that, he had a real estate company that focused on "commercial real estate." (*Id.* at 2.)

His resume contains no experience or background related to residential real estate or work with homeowners' associations; when asked whether he has ever been qualified as an expert to opine as to homeowner associations, he did not answer. (*See* Rothbart Dep. at 54:10-22, 76:23-77:8, attached hereto as **Exhibit C**, cited herein as "Rothbart Dep.")

Rothbart practiced law for approximately three months, until he "had the opportunity to get into commercial real estate" and has not practiced since then. (*Id.* at 10:12-16, 11:2-11.) He estimates that, in a given year, about 50% of his work is serving as an expert. (*Id.* at 77:12-20.)

### II.     The Proffered Opinions.

Rothbart's Report offers legal conclusions, including his opinions that: (1) the LLPOA is a "voluntary association"; (2) the LLPOA has no power to administer and enforce "easements"; (3) what the legal requisites for amending the Declaration are; and (4) that the Defendants'

actions amounted to slander of title. (Rothbart Report at 5-7.)[1] He bases his opinions on a paragraph in an IICLE article drafted by a principal of KSN, the *Lakeland v. Larson* decision, and, as he put it in his expert report, "Property Law 101," whatever that is. (*Id.* at 4-7.) Additionally, his conversations with Plaintiff's counsel formed his opinions, including the bases for his damages opinion as to the putative class. (*See* Rothbart Dep. at 26:8-12, 27:23-28:4.)

Rothbart also offers three opinions as to the purported damages for the alleged "slander of title." First, he opines the denial of access to the lake and parks amounts to $10 per day over the five-year statutory period. (Rothbart Report at 6-7.) He arrives at this figure by comparing Loch Lomond to two nearby lakes: Gages Lake and Lake Julian Trout Farm. (*See id.*)

Second, Rothbart opines that the supposed improper assessment resulted in damages of $10,606 to the Plaintiff's and putative class' residences. (*Id.* at 7.) He simply took the annual assessment amount of $350, and divided it by the mortgage APR rates for a 30-year fixed mortgage as of October 15, 2020 (3.3%). (*Id.*) According to Rothbart, this amount reflects a reduction in purchasing power. (*Id.*)

Third, he concludes that a "mandatory" Homeowner's Association has made property in Loch Lomond "unsellable" without payment of association dues, because it is "highly unlikely that a title company would insure over this encumbrance …." (*Id.*)

## LEGAL STANDARD

The Court is tasked with "ensur[ing] that it is dealing with an expert, not just a hired gun." *Tyus v. Urb. Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). Under Rule 702 and *Daubert*, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific,

---

[1] These conclusions are not admissible as expert opinions for the reasons stated herein. The underlying merits of these legal conclusions are addressed contemporaneously herewith in the Defendants' brief submitted in support of their Motion for Summary Judgment. (*See* Dkt. #198.)

technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Daubert*, 509 U.S. at 594.

The court serves as a "gatekeeper" to ensure expert's testimony "is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch,* 359 F.3d 892, 918 (7th Cir. 2004) (citation omitted). In this role, the Court asks whether: (1) "the witness is *qualified*;" (2) "the expert's methodology is [] *reliable*;" and (3) "the testimony will '*assist* the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Ill. Cent. R.R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007) (emphasis added)).

## **ARGUMENT**

Rothbart's opinions should be stricken and excluded given these requisites and for three primary reasons:

**First**, Rothbart's Report is replete with improper legal opinions. He provides what he believes to be the applicable "law" in this case, consisting of (1) a paragraph from an IICLE chapter written over ten years ago, (2) an Illinois appellate court case, and (3) as Rothbart puts it "Property Law 101." (Rothbart Report at 6.) Rothbart has no expertise in Illinois property law but still claims "what the law is." Then, he offers legal opinions on the ultimate merits, a practice that has been repeatedly rejected by the Seventh Circuit.

**Second**, Rothbart's opinions concerning Plaintiff's purported damages are based on insufficient facts or data, and overall, his legal opinions are not grounded in sound methodology. In fact, Rothbart's deposition revealed that his opinions were not based on ***any*** facts or data at

all; instead, he parrots the text of the answers in Plaintiff's interrogatory responses, without adding anything more than his name. (*Compare* Rothbart Report at 7, *with* Plaintiff's Answer to Interrog. No. 13, attached hereto as **Exhibit D**.) These "opinions" lack the requisite foundation.

**Third**, Rothbart's deposition made clear that, although he has experience in commercial real estate, he lacks the requisite knowledge and expertise to serve as an expert in this residential property dispute concerning the effects of a homeowner's association. (Rothbart Dep. at 10:12-16, 54:10-22, 76:23-77:8; *see generally* Rothbart Resume at 1-2.) Rothbart lacks experience concerning residential real estate transactions, and when pressed, could only repeat his mantra of having "20 years and three billion dollars' worth of real estate transactions" for his experience.

## I. On Balance, Rothbart's Opinions Consist of Improper Legal Conclusions and Should Be Stricken.

Rothbart opines as to the ultimate *legal* issues, but, such "opinions" are in the sole purview of the Court. He proffers the legal conclusions:

- "The LLPOA is a voluntary association" (as opposed to a common interest) (Rothbart Report at 4, 7);

- The LLPOA's did not have the "legal authority to enjoin the Plaintiff," or have assessments. (*id.* at 4-5);

- The legal requisites for amending a Declaration as it "should never have been filed and record" (*id*. at 4-6);

- And, that through the "recordation of the New Formed POA, the Defendants have damaged the Plaintiff through slander of title[.]"

(*Id.* at 6, 8.) All of these opinions should be stricken under the Federal Rules of Evidence.

Rules 702 and 704 "prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (citing *U.S. v. Sinclair,* 74 F.3d 753, 757, n.1 (7th Cir. 1996)). The Seventh Circuit has explained:

Legal arguments are costly enough without being the subjects of "experts" depositions and extensive debates in discovery, in addition to presentations made directly to the judge. If specialized knowledge about tax or demutualization would assist the judge, the holders of that knowledge can help counsel write the briefs and present oral argument.

*RLJCS Enterprises, Inc. v. Pro. Ben. Tr. Multiple Emp. Welfare Ben. Plan & Tr.*, 487 F.3d 494, 498 (7th Cir. 2007); *see also Good Shepherd Manor Found. Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.").[2]

Moreover, the Seventh Circuit has repeatedly found that opinions on property law, which amount to legal arguments that can be presented in counsel's analysis, cannot serve as expert opinion. *Roundy's Inc.*, 674 F.3d at 648 (affirming exclusion of expert opinion where the proffered "opinion as to Wisconsin property law amounts to legal arguments that should be presented to the court in counsel's analysis, not expert opinion testimony"); *Good Shepherd*, 323 F.3d at 564 (affirming exclusion of expert testimony who was a law professor in urban planning opining as to violations of the Fair Housing Amendments Act). Rothbart's "opinions" in this case are nothing more than improper legal conclusions concerning ultimate issues that will be decided by this Court at summary judgment.

For example, in *Rexnord*, the proffered expert's report was excluded because the expert opined as to the ultimate legal issues and professed an inability to review "many documents . . . that would have assisted him in rendering his opinions." *Muniz v. Rexnord Corp.*, No. 04 C 2405, 2006 WL 5153078, at *1 (N.D. Ill. Nov. 2, 2006). The expert proffered an opinion as to the

---

[2] While "[a]n opinion is not objectionable just because it embraces an ultimate issue . . . by the same token, expert testimony that contains legal conclusions is not permitted." *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *4 (N.D. Ill. May 3, 2017) (internal citations and citations omitted). "There is a difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts." *U.S. v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007).

6

ultimate legal issue on an alter-ego relationship and admitted he "did not know many facts" concerning the circumstances of the corporate structure of the relevant entities. *Id.*

In addition to these failures, his opinion was offered "as to the legal issue that will determine the outcome of [the] claim[, and e]xpert testimony as to legal conclusions that determine the outcome of the case are inadmissible." *Id.* at *2; *see also*, *e.g.*, *Georgia-Pac. Consumer Prod. LP v. Kimberly-Clark Corp.*, No. 09 C 2263, 2010 WL 1334714, at *6 (N.D. Ill. Mar. 31, 2010) (striking expert where the report contained numerous legal conclusions).

Moreover, to be helpful, expert testimony "must assist the trier of fact to understand the evidence or to determine a fact in issue;" it must "concern[] a matter beyond the understanding of the average person." *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (Cole, M.J.).

Here, Rothbart's opinions should be stricken as they suffer the same flaws recognized by *Rexnord* and *Sommerfield*. As a matter of law, such legal conclusions or opinions are, by definition, unhelpful. *Van v. Ford Motor Co.*, 332 F.R.D. 249, 271 (N.D. Ill. 2019); *Apotex Corp. v. Merck & Co., Inc.*, No. 04 C 7312, 2006 WL 1155954, at *8 (N.D. Ill. Apr. 25, 2006).[3]

For any of these reasons, Rothbart's legal opinions regarding whether the LLPOA is a voluntary association (Rothbart Report at 4); the scope of the powers of a homeowner's association (*id.* at 4-5); the legal requisites for amending a Declaration (*id.* at 4-6); and, whether defendants committed a "slander of title" (*id.* at 6), should be stricken.

---

[3] Rothbart's legal opinions are deficient for yet another reason. Rothbart has presented an insufficient "methodology" or qualifications to offer opinions on property law, basing his legal conclusions on a one-paragraph ***excerpt*** of an IICLE article written by a KSN attorney over ten years ago (which has no precedential weight here) and a single Illinois appellate Court case (*Lakeland v. Larson*). Both works were cited in Plaintiff's Complaint, (*see* Dkt. #45, ¶ 5), and Rothbart did not read or, apparently, request the full IICLE article. (Rothbart Dep. at 20:16-18.) Rothbart also claims reliance on "Property Law 101," which is "a reference to a law school class in theory," but not one that he has taught or attended. (*Id.* at 22: 2–23.)

II.     **Rothbart's Damages Opinions Are Grounded on Insufficient Facts, Data, and Lack
        Any Reliable Principles or Methods; Thus, They Should Be Stricken.**

Rothbart also opines as to purported damages suffered as to:

- "[D]enied . . . access to the lake and parks" (Rothbart Report at 6-7);

- "[T]he property [purportedly being] unsellable without payment of the
  association dues, either by an active seller or a seller's estate" (*id*. at 6);

- "[T]he abatement in the value of the Plaintiff's and class members
  residences based on the improper assessment." (*id*. at 6-7).

These opinions are not the result of sufficient facts or data and do not stem from reliable

principles or methods. These damages opinions should also be stricken.

Rule 702 requires expert testimony to be based on sufficient facts or data. Fed R. Evid.

702(b). The Seventh Circuit has been clear: "experts' work is admissible ***only*** to the extent it is

reasoned, uses the methods of the discipline, and is founded on data." *Lang v. Kohl's Food

Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) (emphasis added); *Ferguson v. City of Chicago*,

No. 13 C 4084, 2016 WL 3226529, at *2 (N.D. Ill. June 13, 2016) (barring expert testimony

where expert "just pastes the entirety of this data and standards into his initial report without

connecting what he reviewed to what he opines . . . [and plaintiff]'s bare reliance on [the

expert]'s stated expertise . . . cannot make up for the lack of analysis.").

Here, Rothbart's methodologies and opinions, and the underlying facts and data upon

which he relied are unreliable, or, at times, nonexistent. *Chen v. Yellen*, No. 14 C 50164, 2021

WL 4192078, at *4 (N.D. Ill. Sept. 15, 2021) ("When expert opinions are based on unreliable

and incomplete facts, they are fundamentally flawed."); *see also Farmer v. DirectSat USA, LLC*,

No. 08 CV 3962, 2013 WL 1195651, at *9 (N.D. Ill. Mar. 22, 2013) (excluding expert testimony

that was not "based upon sufficient facts or data, the product of reliable principles and

methods[.]").[4]

Rothbart offers *nothing* that would assist the trier of fact as to any damages assessment. Like the unhelpful legal conclusions, for his damages conclusions, he offers nothing more than attaching his name to the theories already advanced by the Plaintiff's counsel. *See e.g., U.S. E.E.O.C. v. Rockwell Int'l Corp.*, 60 F. Supp. 2d 791, 795 (N.D. Ill. 1999).

### A.    Rothbart's Opinion About Access to The Lake and Parks Is Inadmissible as It Merely Parrots Plaintiff's Initial Damages Model.

Rothbart claims that based upon the Plaintiff and putative class' denial of access to the lake and parks, "to which they were otherwise entitled to," such access is valued at $10 per day for each class member over the five-year statutory period; this is based upon two lakes in the area that charge $10 a day for day passes: (i) Gages Lake and (ii) Lake Julian Trout Farm. (*See* Rothbart Report at 6-7.) However, the analytical underpinning is absent for such opinions.

Initially, Rothbart has never visited Loch Lomond. When asked, he could not describe the Lake, describe its size or condition, was questioning himself on where it was located, and when asked if he had seen a picture of Loch Lomond, responded "maybe." (Rothbart Dep. at 23:8-23.) When asked whether Gages Lake—which he claims in his "expert" opinion is an appropriate comparison—shared similar features, Rothbart was unable to answer:

> Q. Have you ever seen a picture of Gauges Lake [sic]?
> A. I may have Googled Gauges Lake [sic].
> Q. Do you recall seeing a picture of it?
> A. I couldn't tell you if I saw a picture or not.
> Q. Could you describe the lake?
> A. No.
> Q. Do you know what the surface area of the lake is?

---

[4] Rothbart's legal conclusions and damages opinions are too unreliable for consideration; they are improper as a matter of law. This is because they go to the ultimate issues in the case, and as pertinent here, are based exclusively upon materials Plaintiff's counsel provided and Rothbart's discussion with counsel. This putative expert engaged in no independent research, and thus, his conclusions are unreliable. *Sommerfield*, 254 F.R.D. at 321 (finding expert's opinion unreliable where he depended upon plaintiff's lawyer's' representations).

A. No.
Q. Do you know if the lake is man-made or natural?
A. No.
Q. Do you know if the lake is stocked with fish?
A. No.
Q. Do you know if the lake is maintained to any degree?
A. No.
Q. Do you know if boating is allowed on the lake?
A. No.
Q. Do you know if swimming is allowed on the lake?
A. I do not know.
Q. Do you know if Gauges Lake [sic] has lifeguards?
A. I do not know.

(Rothbart Dep. at 25:6-26:26:4.) Likewise, when asked about Lake Julian Trout Farm, he responded in a substantively identical fashion. (*Id.* at 26:5-22.) When asked why he chose either as a point of comparison, Rothbart replied, candidly: "I would say most of that information came in discussion with Mr. Langone [(Plaintiff's counsel)]." (*Id.* at 26:8-12, 27:23-28:4.)

Unsurprisingly, when asked for his methodology for determining lake access "value," he stated: "I don't know that I can explain that process… [or] that I recall exactly the process that I undertook. It has been some time … and a lot has transpired." (*Id.* at 28:12-21.) Throughout his testimony, when pushed for the methodology employed to arrive at his conclusions, he simply provided the conclusory response of relying on "nearly 20 years and three billion dollars' worth of real estate transactions." (*Id.* at 23:3-7, 29:23-30:3, 43:14-17, 75:10-14, 76:8-13.)

Rothbart "provides no explanation [for] how he arrived at his conclusions or how his work experience factors into his conclusions," and his testimony and report are clearly "insufficient to clear the bar of admissibility imposed by Rule 702 and *Daubert*." *Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2019 WL 12528939, at *6 (N.D. Ill. Feb. 22, 2019); *see also Levin v. Grecian*, No. 12 C 767, 2013 WL 3669742, at *6 (N.D. Ill. July 12, 2013).

Notably, over two years ago, before Rothbart was disclosed as an expert and in his interrogatory responses, Plaintiff explained the basis for his damages claims for the purported denial of access to the lake and parks by comparing Loch Lomond to Gages Lake and Lake Julian Trout Farm. (*See* Plaintiff's Answer to Interrog. No. 13, Exh. D.)

Rothbart relies upon the ***exact*** two lakes in his expert report. In fact, Rothbart's Report and Plaintiff's earlier interrogatory response are, at times, indistinguishable. (*Compare id.*, *with* Rothbart Report at 7.) Rothbart copies and pastes Plaintiff's counsel's statements instead of analyzing the actual data—showing that his opinions are fundamentally flawed and, accordingly, unreliable. *See Haley v. Kolbe & Kolbe Millwork Co.*, No. 14-CV-99-BBC, 2016 WL 3190286, at *2 (W.D. Wis. June 7, 2016); (*see also* Rothbart Dep. 73:10-21, 75:2-20, *with* 68:6-14 (conceding the time of critical events was copied from Plaintiff's counsel.) His damages opinion consists of nothing more than plaintiff's interrogatory response parroted into his report. Without an appropriate foundation, the damages opinion on access to the lake and parks should be stricken.

### B. The Opinion About Inability to Sell Is Based on No Facts or Data.

Rothbart claims, as a second measure of damages, that as a "further result of the Defendants slander of title actions" "the property is unsellable without payment of the association dues[.]" (Rothbart Report at 6.) This opinion is similarly inadmissible.

Like Rothbart's first opinion on purported damages suffered, this opinion is unsupported by any facts or data at all. He testified that he had not spoken to any homeowner in Loch Lomond, was not aware of a single person in Loch Lomond who was unable to sell their home because of an alleged lien or other incumbrance, had not spoken with ***any*** title company regarding a sale within Loch Lomond to find out whether or not there were any issues with

insurability and could point to no home-sale data points that are applicable. (Rothbart Dep. at 23:8-10, 31:1-12.) Just as in the Court's opinion in *Rockwell*, Rothbart's opinion is unmoored to the facts or record of this case. *See Rockwell*, 60 F. Supp. 2d at 798.

Perhaps not surprisingly, this unsupported opinion ***also*** appears in Plaintiff's interrogatory responses. (Plaintiff's Answer to Interrog. No. 13, Exh. D ("KSN and Kalman will record liens for improperly-imposed dues/assessments thus preventing the sale or refinancing of properties").) Again, Rothbart is adopting, wholesale, Plaintiff's theories without conducting the requisite expert analysis. Accordingly, this opinion on the inability to sell must also be stricken.

### C. Rothbart's Opinion on Abatement in Value to Residences Lacks Foundation and Should Be Stricken.

As a final measure of damages, Rothbart posits that there has been a reduction in the value of Loch Lomond lot owners' residences based upon the improper assessments. (Rothbart Report at 6-7.) His calculations, however, take a circuitous route and, like his other opinions, are not based on the particulars of Plaintiff's, or any other, residents' properties.

His report provides that the "assessments levied decreases the available funds that purchasers have to allocate toward their mortgage, tax and insurance payments." (*Id*. at 7.) He then leaps to a generic APR rate for a 30-year fixed rate mortgage as of October 15, 2020, being 3.3%. Next, because assessments are $350 per year, he posits that each home's value is reduced by $10,606 because there would be an additional 10% purchasing power without the assessments. (*Id*.) Rothbart divided the annual assessment amount by 3.3%. (*Id*.) However, when pressed, it became clear Rothbart conducted no additional analysis into the facts of any resident's home apart from this rudimentary calculation. (Rothbart Dep. at 42:17-43:22, 44:7-10 ("Q: Are you providing any expert testimony today concerning the value of Plaintiff Wahlert's property specifically? A: No.").)

12

Even Rothbart concedes that what he posits about mortgage rates may be off because there are a myriad of factors that go into what a given homeowners' mortgage rate is. (*Id*. at 37:21-38:11.) He admitted to blanket assumptions not tailored to actual data in this case. (*See id*. at 40:13-41:5.) When pressed, he stated that to form his opinions he relied upon his 20 years and three billion dollars of experience "which tells [him] that restrictive covenants decrease the value of the underlying property." (*Id*. at 43:5-44:6, *see also id*. at 114:19-115:11.)

In sum, there is no basis for this proffered abatement in value opinion, other than Rothbart's purported say-so based upon his experience in commercial real estate. This is insufficient and his opinion regarding the abatement of value to residences should be stricken.

### D.    Plaintiff's Opinions Here Suffer From the Same Deficiencies as in *Oak Creek*, Where the Court Excluded His Expert Report.

This is not the first time Rothbart has proffered an unreliable opinion on damages. In *Oak Creek*, the court determined that his opinion as to property valuation was unreliable, and accordingly, irrelevant. The court found that Rothbart's "*ipse dixit* opinion" that the property at issue was worth zero was given "without providing any reliable facts or data in support." *Oak Creek Inv. Properties, Inc. v. Am. Elec. Power Serv. Corp.*, No. 4:18-CV-4009, 2020 WL 5089391, at *5 (W.D. Ark. Aug. 28, 2020). The Seventh Circuit's pronouncement in *Nordisco* rings true here:

> [P]eople who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence. *Post hoc ergo propter hoc* will not do; nor the enduing of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damages theories that make a joke of the concept of expert knowledge.

*Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415–16 (7th Cir. 1992); *Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.*, 608 F. Supp. 2d 1018, 1028 (N.D. Ill. 2009). Here too, it is abundantly clear that Rothbart's damages calculation is divorced from any

actual data as to Loch Lomond homeowners. Accordingly, this opinion must be stricken.

### III.    Rothbart Is Unqualified to Proffer the "Expert" Opinions He Advances as He Lacks Experience in Residential Real Estate.

Rothbart's experience in residential real estate is practically non-existent, and therefore, his experience provides an inadequate foundation upon which he can offer his opinions here.

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010); *see also* Committee Note to the 2000 Amendments of Rule 702. A court must determine "whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton*, 593 F.3d at 617 (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)); *see also Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1023 (N.D. Ill. 2011).

Rothbart lacks the qualifications and experience to provide opinions on residential real estate. He opines as to (1) LLPOA being a "voluntary association"; (2) whether the LLPOA had the power to administer and enforce easements; (3) ultimate legal issues, such as whether slander of title exists; and, finally, (4) damages based on vendibility of residential lots, the value of lake access, and the alleged value of Loch Lomond homes given the existence of a "mandatory homeowner's association." (Rothbart Report at 5–7.) He is unqualified to do so.

*Obrycka* provides guidance that is directly on point. In *Obrycka*, the court concluded that the proffered expert was unqualified to opine as to the "culture" of the Chicago Police Department (CPD), despite extensive academic research on policing in general. 792 F. Supp. 2d at 1023. In doing so, the court noted that the expert's knowledge of the CPD was limited to a three-day visit with the CPD to learn about an issue which bore no relevance to the case at hand. *Id.* So "despite [] [expert]'s impressive credentials and extensive research in many areas of

policing, he lacks the requisite foundation for his CPD-specific opinions." *Id.*

Likewise, in *Kleen*, the court found a law professor, proffered as an antitrust expert, was unqualified as he did not practice in the area, "except in a very indirect manner." *Kleen Prod. LLC v. Int'l Paper*, No. 10 C 5711, 2017 WL 2362567, *25 (N.D. Ill. May 31, 2017). This was true in spite of his review of materials "given that [he] had no antitrust expertise prior to studying these materials, reading them does not endow him with the requisite qualifications." *Id.*

*Obrycka* and *Kleen* demonstrate why Rothbart's Report and opinions should be excluded for a lack of experience and qualifications. Rothbart practiced law for 90 days, yet offers legal conclusions as to the ultimate issues in the matter. (Rothbart Dep. at 10:12-16; *see supra* Sect. I.) His credentials indicate experience with *commercial*—not residential—real estate. When "*comparing* the area in which the witness has superior knowledge, skill, experience, or education," *i.e.*, commercial real estate, "*with* the subject matter of the witness's testimony," *i.e.*, residential and homeowners' associations, Rothbart is unqualified to proffer his opinions regarding these issues. *Gayton*, 593 F.3d at 616 (emphasis added).

## <u>CONCLUSION</u>

Jeffrey Rothbart offers nothing more than improper legal conclusions regarding the ultimate issues and opinions on damages based upon no independent investigation or analysis of data. He does not possess the pertinent experience or knowledge when it comes to homeowners' associations. Worse yet, his opinions are not his own.

WHEREFORE, these Defendants respectfully request that this Court: strike from the record and exclude from consideration on Defendants' Motion for Summary Judgment, Jeffrey Rothbart's Expert Report (Dkt. #210-30); and, grant such other relief as the Court deems just and appropriate.

Respectfully submitted,


/s/John C. Ochoa_____
One of Defendants' Attorneys


Molly A. Arranz, ARDC # 6281122
John C. Ochoa, ARDC # 6302680
Michael M. Chang, ARDC #6323721
Smith Amundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 22, 2021, he served **DEFENDANTS'**
**MOTION TO STRIKE THE EXPERT REPORT OF JEFFREY ROTHBART** on All
Attorneys of Record. This pleading was served upon the attorneys as listed above, pursuant to
the Northern District of Illinois General Order on Electronic Case Filing.

[x]      Pursuant to 28 USC Section 1746(2), I
certify under penalty of perjury that the
foregoing is true and correct. Executed on:
October 22, 2021.

<u>/s/John C. Ochoa</u>