IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J.G. WAHLERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17-cv-08055 |
| | ) | |
| KOVITZ SHIFRIN NESBIT, A PROFESSIONAL | ) | Judge: Robert W. Gettleman |
| CORPORATION, KALMAN MANAGEMENT | ) | |
| INC., and LOCH LOMOND PROPERTY | ) | Magistrate: Gabriel A. Fuentes |
| OWNERS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO STRIKE
<u>EXPERT REPORT OF JEFFREY ROTHBART</u>**

Molly A. Arranz, ARDC # 6281122
John C. Ochoa, ARDC # 6302680
Michael M. Chang, ARDC #6323721
Amundsen Davis LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

***Attorneys for Defendants Kalman Management Inc. and Loch Lomond Property Owners Association***

NOW COME, Defendants, Loch Lomond Property Owners Association ("LLPOA") and Kalman Management, Inc. ("Kalman") (collectively, "Defendants"), through their counsel, and pursuant to Fed. R. Evid. 702, respectfully move to strike the Expert Report of Jeffrey Rothbart, cited in support of Plaintiff's Motion for Class Certification. (*See* Dkt. No. 261 at 2-3 (citing Rothbart Report, Dkt. No. 210-30).)

## **INTRODUCTION**

In its November 12, 2021, Order on Defendants' Motions for Summary Judgment, the Court stated:

> Plaintiff[] [has] offered the expert report of Jeffrey Rothbart to support [his] claim of special damages. Defendants have moved [Doc. 221] to strike that report as consisting of legal conclusions. The court **agrees and strikes the report without prejudice** to plaintiffs offering evidence of special damages at trial.

(Dkt. 226 at 11, n.2 (emphasis added).) The Court struck "the report"—not portions or pages of the report; and, with this finding, it is believed that Rothbart's expert report has been excluded as evidence in its entirety. This ends the matter. Plaintiff should not rely on it to support class certification.

Despite this, Plaintiff's motion for class certification cites to this stricken report as the basis for a purported, class-wide method of proving damages in this case. (Dkt. No. 261 at 3). Plaintiff takes a skewed view of the Court's prior finding, claiming the Court only struck "legal conclusions" within the report—that the Court left intact Rothbart's damages model and conclusions. (*Id*. at 2-3.) Even if that were the case, a position that is not logically grounded in the Court's finding, this Court should exercise its gatekeeping power under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993), at the class certification stage, and strike the entirety of Rothbart's opinions concerning supposed "class-wide damages." His opinions are not

based on sufficient facts, and he provides no reliable principles or methods for his opinions. *See Daubert*, 509 U.S. at 594.

Specifically, Rothbart attempts to opine on the purported damages from Defendants' alleged "slander of title." (*See* Rothbart Report at 6, attached hereto as **Exhibit A**.) But, under cross-examination, Rothbart admitted his opinions are not based on the facts or data in this case, conceding he: (1) did not analyze the specific value of a single property in Loch Lomond (including Plaintiff's); (2) lacks any knowledge about Loch Lomond Lake (the "Lake") or the two nearby lakes he used for comparison; and, (3) could not articulate the analysis he conducted to reach certain of his opinions. Instead, his opinions merely parrot Plaintiff's counsel's damages model. In light of these numerous deficiencies this Court should, again, exercise its *Daubert* gatekeeping authority and strike Rothbart's opinions from the record, at this Rule 23 stage.

## BACKGROUND

I. **PROCEDURAL BACKGROUND.**

Defendants moved for summary judgment. (*See* Dkt. No. 194.) As part of his opposition, Plaintiff heavily relied on the report of his putative expert, Jeffrey Rothbart, citing Rothbart's report in support of Wahlert's legal arguments and his position that he had "special damages" as a result of the recording of the 2015 Amended Declaration. (*See* Dkt. No. 207 at 17, 29-30.)

Thereafter, given the requirements of Federal Rule of Evidence 702 and *Daubert*, Defendants filed a Motion to Strike Rothbart's Report and the opinions therein as: (1) his opinions consist of legal conclusions; (2) his testimony and opinions are not based on sufficient facts; and, (3) he does not employ reliable principles and methods for his opinions. (*See generally* Dkt. No. 221.)

In its Order and Opinion, this Court explained it "agree[d] [with Defendants] and [struck] the report without prejudice…" (Dkt. No. 226 at 11, n. 2.) Though the Court granted the Motion to Strike the report *without* prejudice, it was to allow plaintiff the opportunity to "offer[] evidence of special damages at trial." (*Id.*)

Instead of "offering [any other or additional] evidence," Plaintiff now relies on the same report and opinions by this putative expert for a purported mechanism of assessing special damages for the putative class. (*See* Dkt. No. 261 at 3.) Without more, the Court should strike the expert report in its entirety and exclude Rothbart's opinions from the Rule 23 analysis.

## II. ROTHBART'S "QUALIFICATIONS" AND "OPINIONS."

Rothbart's Report includes improper legal conclusions or opinions and a faulty damages analysis and model. (*See generally* Rothbart Report.) In his class certification brief, Plaintiff does not rely upon Rothbart's legal opinions—conceding that those opinions have already been excluded. (Dkt. No. 261 at 3.) Therefore, Defendants focus on the deficiencies in Rothbart's qualifications and opinions as they relate to his damages analysis and model.

Rothbart works at Stack Real Estate, LLC. (Rothbart Resume at 1, attached hereto as **Exhibit B**.) He has provided testimony in over fifty cases, but his experience is in *commercial* not *residential* real estate. (*See id.* at 3-6.) Prior to Stack Real Estate, LLC, he had a real estate investment firm "focused on the acquisition of U.S. commercial real estate[.]" (*See id*. at 1.) Before that, he had a real estate company that focused on "commercial real estate." (*Id*. at 2.)

His resume contains no experience or background related to residential real estate or work with homeowners' associations; and, when asked whether he has ever been qualified as an expert to opine as to homeowner associations, he did not answer. (*See* Rothbart Dep. at 54:10-22, 76:23-77:8, attached hereto as **Exhibit C**.)

3

Even so, here, Rothbart attempts to opine on the purported damages from Defendants' alleged "slander of title" as to residential property in a homeowners association. (*See* Rothbart Report at 6.) But, under cross-examination, Rothbart admitted his opinions are not based on the facts or data in this case. (*See generally* Rothbart Dep. at 23:8-28:4.) He conceded he has no personal knowledge about and has not personally viewed the Lake or the two nearby lakes he used for comparison; he could not provide analytical steps or a procedure to reach his opinions. (*Id*. at 23:8-23, 25:6-26:4, 26:5-22.) Instead, Rothbart's opinions simply parrot Plaintiff counsel's damages model. (*Id*. at 26:8-12, 27:23-28:4.)

### III.     ROTHBART'S OPINIONS REGARDING DAMAGES.

Rothbart offers three opinions as to the purported damages for the alleged "slander of title," which is the only proposed class-wide damages Plaintiff seeks in his Rule 23 motion.

**First**, Rothbart opines that the supposed improper assessments by the Association resulted in damages of $10,606 to the Plaintiff's and putative class's residences. (Rothbart Report at 7.) In his Rule 23 motion, Plaintiff cites this calculation extensively. (Dkt. No. 261 at 3.) To reach this conclusion, however, Rothbart simply took the annual assessment amount of $350, and divided it by the mortgage APR rates for a 30-year fixed mortgage as of October 15, 2020 (3.3%). (*Id*.) Rothbart testified that this amount reflects a reduction in ***purchasing power*** for prospective homeowners, ***not*** a reduction in the ***value*** of each individual property. (Rothbart Dep. at 40:13-41:5.) This latter issue of "damages" for existing homeowners is the heart of what's at issue here. When pressed, Rothbart conceded he conducted no additional analysis into the actual value of any resident's home apart from this rudimentary calculation. (*Id*. at 42:17-43:22.)

Rothbart also acknowledged assumptions based on his conjecture about the facts, and these assumptions are the only underpinning of his damages opinions. For example, his postulations

4

about mortgage rates (at 3.3%) are almost certainly inaccurate because there are multiple factors, including market swings, for what a given homeowner's mortgage rate is. (*Id*. at 37:21-38:11.) He further admitted that he assumed, without any evidence, that all home purchasers would obtain a mortgage to purchase a home. (*Id*. at 40:13-41:5.) He also assumed that each homeowner lives on a fixed "budget" such that their overall purchasing power would be reduced due to the existence of assessments. (*Id.* at 42:17-43:4.) When pressed, he simply stated that his opinions are based upon twenty years and three billion dollars of experience "which tells [him] that restrictive covenants decrease the value of the underlying property." (*Id*. at 43:5-44:6, *see also id*. at 114:19-115:11.) He cited no specific data or statistics. (*See id.*)

**Second**, Rothbart opines the denial of access to the Lake and nearby parks amounts to $10 per day over the five-year statutory period. (Rothbart Report at 6-7.) He arrived at this figure by comparing the Loch Lomond Lake to two nearby lakes: Gages Lake and Lake Julian Trout Farm. (*See id.*) However, the analytical underpinning is absent for such opinions.

Initially, Rothbart admitted that he has never visited Loch Lomond Lake. He could not describe the Lake, knew neither the size nor condition of the Lake, questioned himself as to where it was located; when asked if he had seen a picture of Loch Lomond, he responded "Maybe." (Rothbart Dep. at 23:8-23.) When asked about Gages Lake—which he claims is a comparative lake for his analysis, Rothbart testified: he "couldn't tell [] if he saw a picture" of it or not; he did not know the surface area, whether it was man-made or nature or if it was stocked with fish; whether the Gages Lake was maintained; and, whether swimming and boating were allowed. (*Id.* at 25:6-26:4.) He testified in substantively similar fashion regarding the other lake, Lake Julian Trout Farm, which he used for comparative analysis. (*Id*. at 26:5-22.)

5

When asked why he chose either as a point of comparison to Loch Lomond, he answered "most of that information came in discussion with [Plaintiff's counsel]." (*Id*. at 27:23-28:4.)

Unsurprisingly then, when asked to elaborate on his methodology for forming his opinions concerning the value of Lake access, he stated:

> I don't know that I can explain that process. I don't know that I recall exactly the process that I undertook. It has been some time since I prepared this report and a lot has transpired. So I don't recall the process that I undertook for that.

(*Id*. at 28:12-21.)

**Third**, this putative expert concluded that a "mandatory" Homeowner's Association has made property in Loch Lomond "unsellable" due to the existence of "association dues" that may be owed by home sellers, because it is "highly unlikely that a title company would insure over this encumbrance …." (Rothbart Report at 6.) When questioned, however, he admitted that he was not aware of even one home in Loch Lomond that was unable to be sold due to the existence of the 2015 Amended Declaration. (Rothbart Dep. at 31:4-8.) He also had no spoken to any title companies concerning property sales in Loch Lomond concerning the issue. (*Id.* at 31:9-12.) He could cite no relevant data, documents or other foundation in support of this opinion.

## LEGAL STANDARD

The Court has the ability to rule on a party's challenge to an expert's opinion prior to ruling on class certification, especially if the "testimony is critical to class certification." *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010). Under Rule 702 and *Daubert*, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

6

reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Daubert*, 509 U.S. at 594.

This Court is tasked with "ensur[ing] that it is dealing with an expert, not just a hired gun." *Tyus v. Urb. Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). The Supreme Court charged district courts with a "gatekeeping" duty in *Daubert*, and the "insistence of reliability helps ensure the integrity of the judicial process." *Paramount Media Group, Inc. v. Village of Bellwood*, No. 13 C 3994, 2015 WL 7008132, at *7 (N.D. Ill. Nov. 10, 2015) (citing *Daubert*, 509 U.S. at 597). This function is also "intended to prevent irrelevant and unreliable expert testimony from tainting a case[.]" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 420 n. 10 (7th Cir. 2005). The Court must ask whether: (1) "the witness is *qualified*;" (2) "the expert's methodology is [] *reliable*;" and, (3) "the testimony will '*assist* the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Ill. Cent. R.R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007) (emphasis added)).

## ARGUMENT

**I.     THE COURT SHOULD NOT CONSIDER ROTHBART'S EXPERT OPINIONS BECAUSE IT ALREADY STRUCK THE REPORT IN ITS ENTIRETY.**

The Court previously struck "***the*** report" of Rothbart; and this prior order should be sufficient to grant the renewed request, here.

Indeed, this Court's grant of the Defendants' Motion to Strike the Rothbart Report without prejudice meant that the Plaintiff cannot—without more—rely upon that Report for showing special damages; rather, Plaintiff needed to amend or further substantiate and support the special damages theory. *See generally Contempo Acquisition, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, No. 06 CIV. 3654 (DF), 2007 WL 3254916, *2 (S.D.N.Y. Oct. 30, 2007) (granting a motion to dismiss without prejudice to plaintiff reasserting claims should its investigation reveal an adequate

7

basis for the dismissed claims); *Lensing v. Potter*, No. 1:03-CV-575, 2010 WL 2670785, *4 (W.D. Mich. July 1, 2010). When a Court grants such a motion, *without* prejudice, the party whose submission was struck or dismissed can renew, refile or readvance the motion, relief or evidence if he can overcome the deficiency with new or additional facts, data or evidence. *See generally United States v. Haught*, No. 1:06 CV 40, 2007 WL 4098158, *2 (N.D.W. Va. Nov. 16, 2007).[1]

Here, Plaintiff has provided no additional support, foundation or substantiation for Rothbart's opinions (or Wahlert's own position on special damages). Instead, in his Motion for Class Certification, Plaintiff relies on the same Report and tries to narrowly construe the Court's Opinion and Order in an attempt to argue special damages allegedly due to the "class." (*See* Dkt. No. 261 at 3.) No new facts, evidence or opinions have been provided. Instead, Plaintiff either ignores the Court's prior finding or advances an unfounded, narrow construction of the Court's finding.

In fact, it is clear that the Court struck Rothbart's entire expert report. In the body of the Opinion, specifically the paragraph wherein the Court provides the footnote, it discusses Plaintiff's damages as it pertains to the slander of title claim. (Dkt. No. 226 at 11.) The Court then finds the opinion of Jeffrey Rothbart should be stricken, noting that Rothbart's Report consists of legal conclusions. (*See id.* at 11, n. 2.) The footnote is dropped in a paragraph in which the Court specifically discusses damages, such that the logical conclusion is that the Court struck the entire expert opinion, *including* those regarding damages. (*Id.*) Moreover, the arguments as to Plaintiff's

---

[1] The Defendants have reasonably read and relied upon the Court's order as one striking Rothbart's expert report in its entirety. To allow Plaintiff to resurrect that same report at this juncture prejudices Defendants in both the class certification briefing and eventual merits of the case because without Plaintiff seemingly having an expert on damages, given the prior order, there has been no reason to retain and disclose a counter-expert on damages.

slander of title claim focused on Rothbart's damages opinion—not his pronouncement of legal theories. (*See, e.g.*, Dkt. No. 225 at 20.)

As such, when the Court stated it "agrees [with Defendants] and strikes the report without prejudice to plaintiffs offering evidence of special damages," it meant the Rothbart Report was stricken in its entirety, unless or until Plaintiff showed special damages in some other way (which he has not done). On this basis, the Court should grant this Motion to Strike.

II. **IF FOUND THAT ROTHBART'S OPINION WAS ONLY STRICKEN AS TO LEGAL CONCLUSIONS, THE COURT SHOULD NEVERTHELESS STRIKE HIS DAMAGES OPINIONS BECAUSE THEY ARE GROUNDED IN INSUFFICIENT FACTS OR DATA AND LACK ANY RELIABLE PRINCIPLES OR METHODS.**

Even if this Court didn't strike Rothbart's expert report in its entirety at the summary judgment stage, it should nevertheless strike Rothbart's remaining opinions now. Rothbart opines as to purported damages suffered as to:

- "[T]he abatement in the value of the Plaintiff's and class members residences based on the improper assessment." (Rothbart Report at 6-7).

- "[D]enied . . . access to the lake and parks" (*id*. at 6); and

- "[T]he property [purportedly being] unsellable without payment of the association dues, either by an active seller or a seller's estate." (*Id*.)

These opinions are not the result of sufficient facts or data and do not stem from reliable principles or methods; they should be stricken. His damages opinions consist of nothing more than speculation.

Rule 702 requires expert testimony to be based on sufficient facts or data. Fed R. Evid. 702(b). The Seventh Circuit has been clear: "experts' work is admissible ***only*** to the extent it is reasoned, uses the methods of the discipline, and is founded on data." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) (emphasis added); *Ferguson v. City of Chicago*, No. 13 C 4084, 2016 WL 3226529, at *2 (N.D. Ill. June 13, 2016) (barring expert testimony where expert

9

"just pastes the entirety of this data and standards into his initial report without connecting what he reviewed to what he opines ..."). Rothbart's methodologies and opinions, and the underlying facts and data upon which he relied, are unreliable and, at times, nonexistent. *Chen v. Yellen*, No. 14 C 50164, 2021 WL 4192078, at *4 (N.D. Ill. Sept. 15, 2021) ("When expert opinions are based on unreliable and incomplete facts, they are fundamentally flawed."); *see also Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 1195651, at *9 (N.D. Ill. Mar. 22, 2013) (excluding expert testimony that was not "based upon sufficient facts or data, the product of reliable principles and methods[.]").

Rothbart's damages opinions are too unreliable for consideration at class certification. Again, his damages analysis is the primary basis for Plaintiff's submission, under Rule 23, for a class-wide mechanism for damages. This putative expert engaged in no independent research as a basis for his damages model, and thus, his conclusions are unreliable. *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 321 (N.D. Ill. 2008) (finding expert's opinion unreliable where he depended upon plaintiff's lawyer's' representations). As such, Rothbart's report is an improper basis upon which Wahlert can rely for meeting his Rule 23 burden for showing a common issue of damages or predominance of this common issue for a putative class.

    **A.    Rothbart's Opinion on Abatement in Value to Residences Lacks Foundation and Should Be Stricken.**

In his Motion for Class Certification, Plaintiff highlights Rothbart's final measure of damages, in which Rothbart posits that there has been a reduction in the value of Loch Lomond lot owners' residences based upon the improper assessments. (*See* Dkt. No. 261 at 3 (citing Rothbart Report at 7).) Plaintiff opines that this calculation supports issues of commonality and predominance amongst the class; however, Rothbart's calculations are unreliable and inapplicable across an entire "class" as his analysis is not based upon statistics, data or analysis of any of the

10

Loch Lomond residents' properties.

Rothbart's Report provides that the "assessment levied decreases [sic] the available funds that purchasers have to allocate toward their mortgage, tax and insurance payments." (Rothbart Report at 7.) He then inserts a generic APR rate for a 30-year fixed rate mortgage as of October 15, 2020, being 3.3%. (*Id.*) Because assessments are $350 per year, he also posits that each home's value is reduced by $10,606 because there would be an additional 10% purchasing power without the assessments. (*Id.*) Rothbart divided the annual assessment amount by 3.3%. (*Id.*) However, Rothbart admitted to no particularized or relevant analysis into the facts of any resident's home. (*See e.g.*, Rothbart Dep. at 42:17-43:22, 44:7-10.)

Rothbart's numbers seem to be plucked from thin air, and he even admitted to blanket assumptions not tailored to actual data in this case. (*See id*. at 40:13-41:5.) Plaintiff should not be able to rely on an expert's damages calculations at class certification, when the numbers are not even derived from the lawsuit at hand. Moreover, Rothbart concedes that what he posits about mortgage rates may be inaccurate because there are multiple factors that go into calculation of a mortgage rate. (*Id*. at 37:21-38:11.) He simply relied upon his experience "which tells [him]" what the effect is on the value of the underlying property. (*Id*. at 43:5-44:6, *see also id*. at 114:19-115:11.)

In addition, Rothbart's damages opinion concerns loss of value in *purchasing power* for a prospective home buyer—not the purported decrease in value of property owned by residents of Loch Lomond as of 2015. (*See* Dkt. No. 210 at ¶ 40; Rothbart Dep. at 40:13-41:9.) This opinion in no way supports or is helpful for the considerations under Rule 23; it would not be helpful to the trier of fact to understand the evidence in the case, either. *Myers,* 629 F.3d at 644.

Rothbart's opinion on abatement of value to residences is irrelevant as it bears no connection to the evidence in this case. Plaintiff cannot use it to meet his burden for a common mechanism for showing damages, under Rule 23; and, it should be stricken.

### B. Rothbart's Remaining Damages Opinions Suffer the Same Deficiencies and Should be Stricken.

Plaintiff relies upon Rothbart's Report in support of purported, class-wide damages in two additional ways: (1) denial of access to the Lake and parks, and (2) property allegedly being unsellable without payment of the association dues. Similar to his abatement in value opinion, Rothbart's derived damages calculations are based on deficient facts. In fact, his damages opinion consists of nothing more than wholesale adoption of one of Wahlert's Rule 33 interrogatory responses.

*U.S. E.E.O.C. v. Rockwell Intern. Corp.* provides grounds for why this portion of Rothbart's opinions should be struck. 60 F. Supp. 2d 791, 797 (N.D. Ill. 1999), *aff'd sub nom. E.E.O.C. v. Rockwell Intern. Corp.*, 243 F.3d 1012 (7th Cir. 2001). There, the court struck an expert opinion because it heavily relied on language given to him by counsel and, thus, was inadmissible under Fed. R. Evid. 702 as interpreted by *Daubert*. In this way, the expert "failed to employ…intellectual rigor" to support his claims. *Id.* The court noted that "a proffered expert must 'bring to the jury more than the lawyers can offer in argument.'" *Id.* (quoting *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992)). Here, Rothbart fails to support his opinions with research, analysis or a methodology for which an expert is appropriate or needed; instead, he simply relies on a damages estimate previously set forth by Plaintiff.

Rothbart has not employed intellectual rigor but rather bases his opinions on speculative and unreliable assumptions. He opines that denial of putative class members' access to the Lake and parks, "to which they were otherwise entitled to," has resulted in a $10/day damage over the

12

five-year statutory period; this is based upon two lakes in the area that charge $10 a day for day passes: (i) Gages Lake and (ii) Lake Julian Trout Farm. (*See* Rothbart Report at 6-7.) However, Rothbart provides no analysis or reasoning for reaching this conclusion.

Instead, over two years ago, before Rothbart was disclosed as an expert, Plaintiff responded to a Rule 33 interrogatory regarding the basis for his damages claims, by referencing the Gages Lake and Lake Julian Trout Farm. (*See* Plaintiff's Answer to Interrog. No. 13, attached hereto as **Exhibit D**.) Without explanation as to why he chose these lakes or analysis of them, Rothbart relies upon the exact two lakes in his expert report; and Plaintiff's interrogatory response and Rothbart's Report are almost indistinguishable. (*Compare id*., *with* Rothbart Report at 7.) Rothbart copies and pastes Plaintiff's discovery response instead of analyzing the actual data; his opinion about the $10/day "damage" is flawed and unreliable. *See Haley v. Kolbe & Kolbe Millwork Co.*, No. 14-CV-99-BBC, 2016 WL 3190286, at *2 (W.D. Wis. June 7, 2016); (*see also* Rothbart Dep. 73:10-21, 75:2-20, 68:6-14 (conceding the time of critical events was copied from Plaintiff's counsel).)

Rothbart has never visited Loch Lomond Lake, Gages Lake or Lake Julian Trout Farm. He could not describe the Lake, describe its size or condition, or confirm even seeing a picture of the Lake. (Rothbart Dep. at 23:8-23.) He was unable to answer whether Gages Lake or Lake Julian Trout Farm shared similar features to the Lake. (*See id.* at 25:6-26:4-22.) Asked why he chose either as a point of comparison, Rothbart explained: "most of that information came in discussion with [Plaintiff's counsel]." (*Id*. at 26:8-12, 27:23-28:4.)

Thus, there is no evidence that Rothbart employed "intellectual rigor." *Rockwell*, 60 F. Supp. 2d at 797. Unsurprisingly, when asked for his methodology for determining lake access "value," he stated:

13

> **I don't know that I can explain that process… [or] that I recall exactly the process that I undertook. It has been some time … and a lot has transpired.**

(Rothbart Dep. at 28:12-21.) Throughout his testimony, asked for the methodology employed to arrive at his conclusions, Rothbart would only rely upon "nearly 20 years and three billion dollars' worth of real estate transactions." (*Id*. at 23:3-7, 29:23-30:3, 43:14-17, 75:10-14, 76:8-13.)

Rothbart "provides no explanation [for] how he arrived at his conclusions or how his work experience factors into his conclusions," and his testimony and report are clearly "insufficient to clear the bar of admissibility imposed by Rule 702 and *Daubert*." *Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2019 WL 12528939, at *6 (N.D. Ill. Feb. 22, 2019); *see also Levin v. Grecian*, No. 12 C 767, 2013 WL 3669742, at *6 (N.D. Ill. July 12, 2013).

Rothbart also opines that, as a "further result of the Defendants slander of title actions" "the property is unsellable without payment of the association dues[.]" (Rothbart Report at 6.) This opinion also appears in Plaintiff's interrogatory responses. (Pl.'s Answer to Interrog. No. 13.) Like Rothbart's other opinions, this conclusion is unsupported by actual facts or data. Rothbart did not speak to any homeowner, was not aware of anyone in Loch Lomond who was unable to sell his or her home because of a purported incumbrance of an association due, had not spoken with any title company regarding issues with insurability or clearing of title because of association dues owed, and could point to no home-sale data points upon which he relied. (Rothbart Dep. at 23:8-10, 31:1-12.) This opinion is, similarly, unmoored to the facts or record of this case. *See Rockwell*, 60 F. Supp. 2d at 798.

These opinions as to damages based on denied lake access and on the inability to sell must be stricken.

### C. Plaintiff's Opinions Here Suffer From the Same Deficiencies as in *Oak Creek*, Where the Court Excluded His Expert Report.

As Defendants explained in the first Motion to Strike, in *Oak Creek*, the court found that Rothbart proffered an unreliable opinion on damages and determined that his opinion as to property valuation was unreliable, and accordingly, irrelevant. *Oak Creek Inv. Properties, Inc. v. Am. Elec. Power Serv. Corp.*, No. 4:18-CV-4009, 2020 WL 5089391, at *5 (W.D. Ark. Aug. 28, 2020). The same is undoubtedly true here.

In fact, the Seventh Circuit's pronouncement in *Nordisco* rings true here:

> [P]eople who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence. *Post hoc ergo propter hoc* will not do; nor the enduing of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damages theories that make a joke of the concept of expert knowledge.

*Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992); *Alexian Bros. Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.*, 608 F. Supp. 2d 1018, 1028 (N.D. Ill. 2009).

Rothbart's opinion is divorced from any actual data as to Loch Lomond homeowners, resulting in a conclusory damages calculation. Accordingly, this opinion must be stricken.

WHEREFORE, these Defendants respectfully request that this Court: strike from the record and exclude from consideration on Plaintiff's Motion for Class Certification Jeffrey Rothbart's Expert Report (Dkt. No. 210-30); and, grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ John C. Ochoa
One of Defendants' Attorneys

Molly A. Arranz, ARDC # 6281122
John C. Ochoa, ARDC # 6302680
Michael M. Chang ARDC #6323721
Amundsen Davis LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 21, 2022, he served **DEFENDANTS' MOTION TO STRIKE EXPERT REPORT OF JEFFREY ROTHBART** on All Attorneys of Record. This pleading was served upon the attorneys as listed above, pursuant to the Northern District of Illinois General Order on Electronic Case Filing.

[x] Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct. Executed on: December 21, 2022.

/s/ John C. Ochoa